After the argument, the action stood continued for advisement * to this term ; and now the justices present delivered their opinions seriatim as follows : —
Sedgwick, J.
The facts, which, in my opinion, are necessary to be considered in the decision of this cause, are the following: —
On the sixth day of July, 1786, William Dudley, being seised in fee tail of certain lands in Roxbury, mortgaged them in fee simple to Thomas Williams, one of the defendants.
On the first day of November, 1786, William Dudley died, and thereupon administration on his estate was granted to the present defendants.
After the granting of the administration, and before making the deed declared on, the defendants, obtained from the Court of Common Pleas a license to sell all the real estate of which William Dudley died seised.
On the ninth day of April, 1789, Thomas Williams, for a valuable consideration, assigned to Governor Sumner and his wife, who was the original plaintiff in this action, all his right, by virtue of the *149 deed of mortgage. Governor Sumner died before the commencement of the action.
On the same ninth of April, the defendants, having observed all the requirements of law in that regard, sold the equity of redemption, which William Dudley had in the mortgaged premises, to Governor Sumner and wife, and made a deed thereof to them, therein styling themselves “ administrators of all and singular the goods and chattels, rights and credits of William Dudley, late of Roxbury.” After premising that they had petitioned the Court of Common Pleas of the county of Suffolk, to obtain license to sell all the real estate of which Dudley died seised in fee simple; that such license had been accordingly granted; that they had advertised the same according to law; and that the grantees, Governor Sumner and wife, had become the purchasers, by being the highest bidders at auction, — the deed then proceeds, that they, the said Thomas Williams and Joseph Williams, “ in their capacity of administrators * on the estate of William Dudley,” in consideration of £305, paid to them, as administrators as aforesaid, by the grantees, had, in their said capacity, given, granted, &c., and thereby did give, grant,-&c., the equity of redemption, of which the said William Dudley died seised and possessed in the premises, which are described; and the more particularly to specify what was intended to be sold, that is, the equity of redemption and nothing else, the mortgage from Dudley to Williams, and his assignment thereof to the grantees, are particularly set forth. The habendum is in these words: —• “ To have and to hold the same to the said Increase and Elizabeth, their heirs and assigns, to their use and behoof forever.” The grantors then covenant, in their said capacity of administrators, with the grantees, that they, as administrators as aforesaid, are lawfully seised of the premises; that they are free and clear from all encumbrances, by them or with their knowledge made, saving and excepting the mortgage deed and bond, above referred to, and the right of dower of William Dudley’s widow; they also covenant, that they had, in their said capacity, good right to sell and convey the same to the grantees, and that they, as administrators as aforesaid, would warrant and defend the same against the lawful claims and demands of all persons ; and they subscribed their names, each as administrator on the estate of William Dudley, and annexed seals expressly as administrators.
After the death of William Dudley, and after the death of Governor Sumner, Joseph Dudley, the son and heir of William, commenced an action of formedon in descender against the original plaintiff, Elizabeth Sumner, and recovered judgment against her whereby she was evicted.
*150 The great question in this case is, — whether the defendants are nound by the covenants in their deed, in their private capacities.—• But, previous to the discussion of that question, I will endeavor to ascertain (and it is important that it should be ascertained) what was intended as the subject of the grant. And here I will observe, that it * seems to me, that the mind of every man capable of comprehending the subject, unshackled by speculative and abstract reasoning, who should endeavor, from the plain and settled signification of the words, to discover the meaning of the parties, would feel perfect satisfaction in the conclusion, that it was intended to sell the equity, which William Dudley had, of redeeming the mortgaged premises, and nothing more. Great, and, I think", unusual attention is paid in the language of the deed, that no doubt should remain upon this question.
In the premises, to exclude all pretension to their having any claim to the land, and to confine their claim merely to the equity of redemption, they particularly state the mortgage; that it was outstanding, and had that day been assigned to the grantees; thereby showing that they had no right to sell the land. The subject of the grant is the “ equity of redemption, of which William Dudley died, seised in the premises.” The habendum is expressed, to have and to hold the same.
Here commences the argument of the counsel for the plaintiff". —■ They say that the defendants, in expressing the subject of the grant, call it “ the equity of redemption, of which William Dudley died seised; ” and that, by adding “ in the premises,” they have distinguished that subject from the premises ; and then they go on to show that “ the premises can refer to nothing but the land described.”
Having ascertained this, they then proceed further to show from it, that the subject of the defendant’s covenant is the land, and not the equity of redemption. They say that the word same, in the habendum, refers to premises, as the next antecedent; but that, if they are mistaken in this, the covenant of seisin, that they were lawfully seised of the premises, and their reference thereto in the subsequent covenants, by the word same, renders it manifest that it was intended that the covenants should go to the land, and not be confined to the equity of redemption; that it is a good rule of .construction, that where, in an instrument, a word *or expression.has a definite meaning annexed to it, and it again recurs in the same instrument, it is fairly to be presumed (unless it can be clearly inferred, from the subject matter or context, that a different meaning was intended) that it is used in the same sense ; that the subject of the grant is the equity *151 of redemption to the premises; that the equity is a distinct subject from the premises ; that the premises and the land are the same; and that the covenants refer to the premises, and of consequence to the land. This I take to be the substance of the argument in this regard ; but I am not satisfied with its justness.
A strict, literal, and grammatical construction of an instrument, in its various parts, taken separately, would sometimes be absurd, sometimes contradictory, and frequently unjust, because against the manifest intention of the parties. But a liberal consideration is to be had of the whole instrument, in relation to the subject matter, to .discover what was the true intention of the parties.
The technical meaning of the word premises, in a deed of conveyance, is every thing which precedes the habendum. (1) In this case the word “ premises ” first occurs in the premises of the deed. The office of an habendum is to name the grantee, and limit the certainty of the estate in the subject of the grant. (2) The word premises, where first used, means undoubtedly the land, the equity of redeeming which was sold. But I think the word same, used in the habendum, the word premises, used in the first covenant, and the word same, used in the other covenants, all mean the same thing, viz., the subject of the grant.
The grant is of an equity of redemption, in certain described lands, and the habendum is to have and hold ¡he same. Does the word same here refer to the land, in which was the equity of redemption, or to the equity of redemption ? I am perfectly satisfied, to the latter^ only. The estate in the land, and that in the equity of redemption, might be, and were, holden separately; they were not, nor * could they be holden together. The moment they should be united, that moment the equity of redemption would cease to exist. There can be no possible motive that the habendum should mean the land. It would not in that case execute its proper use ; which is to limit the certainty of the estates in the thing granted. With the lands, the administrators, as such, had nothing to do. They undertook to sell the equity, and it was proper, and in such a case is usual, that there should be an habendum, and that it should refer to the subject of the grant. ■Besides, it is proper, when it can be done, consistently with the words of a deed, that it should be so construed, that all parts may have effect; but if this habendum is construed to refer to the land, it will be wholly inoperative. An habendum cannot operate as a grant or conveyance.
*152 Let this case be illustrated by one analogous. Should there be a grant of one acre, parcel of one hundred acres, particularly described, and the habendum, instead of expressing the granted premises, should say, as in this case, “ to have and to hold the same,” no one will suppose that such an habendum should be construed to refer to the hundred acres; and yet such a case would differ nothing, in principle, from the present. The one would regard the quantity; the other regards the quality. And it maybe added, that there can be no possible motive suggested, why the land, which was not the subject of the grant, should be the subject of the habendum, while the,equity of redemption, the real subject of the grant, should be wholly disregarded by the habendum.
The covenants, as meaning to attach only to the equity of redemption, are, in my opinion, equally explicable. In the construction of doubtful or ambiguous words or expressions, it is our duty to refer them to the subjects, respectively, to which they properly belong, so as to carry into effect the true intention of the authors of them.
The first covenant is, that the defendants, in their capacity of administrators, are lawfully seised of the premises; *and the other three covenants make use of the word same, in manifest reference to the word premises; so that, if the word premises, in the first covenant, means the equity of redemption, and nothing more, then it does not mean the land. It has already been observed, that the premises of a deed of conveyance comprehend every thing which precedes the habendum. In this case they included the parties, the capacity of the grantors, the application to the Court of Common Pleas for license to sell, the obtaining that license, the advertising of the sale, the sale itself, the grant and the subject of it, the equity of redemption, and the land, in relation to which the equity of redemption existed ; — all these are premises. But did the word premises, used in the covenant, mean all these? The supposition is absurd and ridiculous. To what, then, was it intended to be referred ? By a just application of the rule already mentioned, — by referring the word “premises ” to the subject to which it properly belongs, — there will, I apprehend, be no difficulty in determining what the parties intended. They intended that the words should have an effect; and this they could not, unless they related to the equity of redemption.
Concomitantly with the transaction now under consideration, that •is, on the same day, Governor Sumner purchased of Thomas Williams a mortgage, which had been previously made by William Dudley, of the land in question, and took an assignment of it to himself ■and his wife. In the deed of assignment, the deed, on which tlis *153 action is brought, is expressly referred to. The assignment of the mortgage vested the fee in the land in the grantees ; but in that assignment one of the defendants had nothing to do, nor had the other in his capacity of administrator. Can we then believe that the covenants of the administrators were intended to relate to the land, with which they had nothing to do, but as connected with the equity of redemption? We know that the word premises, in the covenant, could not be intended to comprehend all that are properly premises * in the deed. How, then, shall it be restrained, and to what shall it be made to relate ? I answer, to that which we can collect to have been the intention of the parties; and I have no doubt, that was the equity of redemption, and nothing more. And besides, it would be a most absurd transaction for the defendants to undertake to covenant about that which the deed itself showed they had no interest in, while the covenants had no relation to the subject of the grant. I have thought it proper to prove that the subject of the deed, in all its parts, was the equity of redemption; because that shows that the defendants mean to act in conformity to legal authority.
It is proper also to observe, that, in this case, the license granted by the Court of Common Pleas to the defendants, to sell the real estate, of which William Dudley died seised, authorized them to sell the equity of redemption ; for the mortgage by William Dudley to Thomas Williams operated a discontinuance of the estate tail; the consequence of which was, that Williams became seised in fee of the mortgaged premises, and Dudley became seised, and died seised, of the equity of redemption; and these different rights, so acquired, were good against all the world, but the heir in tail. (3)
The deed of Dudley to Williams in fee simple gave a correspondent seisin; so that on the death of Dudley, the heir in tail was driven to his formedon in descender. For the statute de donis (in conformity to the established rule of the common law, that whenever any person acquired a presumptive right of possession, his possession was not to be defeated by entry, however slender or unlawful the title of the grantor might be) did not absolutely nullify the alienations of the donee in tail, but enabled the issue to defeat them by his formedon in descender. The alienation of Dudley, then, conveying a fee simple to Williams, operated a discontinuance. This fee simple had, depending upon it, an equity of redemption, of which Dudley died seised; and such equity of redemption has always been considered *as subject to be *154 sold by virtue of a license obtained to sell the real estate of a person deceased.
These propositions then, in my judgment, are proved: 1. That William.\ Dudley died seised of an equity of redemption. — 2. That the defendants were authorized to sell that equity of redemption.— 3. That by the deed, on which the action is brought, they sold that equity of redemption, and nothing more. — And, 4. That all the covenants of that deed relate to the subject of the grant, the equity of redemption, and to nothing else, (a)
I now proceed to consider, what I have always thought the great, and indeed the only important question in the case: — whether the defendants are bound by their deed in their private capacities? And 1 am, after the fullest consideration I have been able to give to the case, satisfied, both on principle and on authority, that the covenants cannot be considered as personal, and therefore that judgment ought to be rendered for the defendants.
In every contract the intention of the parties is to be carried into effect. A contract is an agreement between two or more, concerning something to be done, whereby the parties are bound mutually to each other, or one is bound to the other. In this definition, which is plain, simple, intelligible, and founded on the eternal and immutable principles of justice, all authors of respectability, whom I have had an opportunity of consulting, in substance agree. This implies understanding and consent. And that a contract, in whatever terms it may be expressed, cannot be carried beyond the intent of, the parties at the time of entering into it, is clear from the nature of its constitution ; one essential ingredient being, that it is entered into freely, of the parties’ own accord. (4) And from hence it follows, that no man can be called upon to perform an alleged contract, which has not received his previous assent. If the performance of a contract be demanded against a man, and he can truly say, Non in hcec feeder a veni, — I have never assented to any such contract, — he must be discharged; and *1 dare venture to affirm that there is no case, in any civilized country, where a man has been holden to respond in damages for the non-performance of a contract, unless he had violated stipulations to which he had previously assented. In this case the allegation is, that the defendants have entered into stipulations in their private capacities; and if they have not, the plaintiff cannot recover.
*155 That the defendants intended to contract in their capacities of administrators, and not in their private capacities, is to my mind most evident;-—1. From the words of the instrument themselves, and, 2. From the nature of the transaction.
1. They commence the deed by announcing the character in which they acted, — as administrators; in that capacity they leceive the consideration money ; in the same capacity they make the grant; they repeat, at the commencement of each of the four covenants, that they act in that capacity; each adds to the signature of his name, that it is done as administrator on the estate of William Dudley; and, lastly, they affix seals, not in their private capacity, but in their capacity of administrators. No argument could, in my mind, add to the satisfaction, with which I infer from these facts, that it was perfectly understood at the time of the contract, that the defendants acted in their capacity of administrators, and not in their private capacities.
2. Were the words doubtful or ambiguous, I should, from the nature of the transaction, feel strengthened in the same conclusion. The defendants could act with effect in their character of administrators; while in their private capacities, neither could they sell, nor could the grantees take. It is reasonable to suppose, that, throughout the same instrument and transaction, they should act in the same character. There is no reason, nor could there have been any motive, for their assuming on themselves the responsibility of the soundness of the title which they were selling. They had no consideration for this; for the consideration money, which they received, was assets in their hands, for the benefit of Dudley’s creditors.
*On the whole, from the instrument, and the nature of the transaction, we may safely conclude, that it was as well understood by the parties, that the defendants were not to be responsible, in their private capacities, upon the covenants, as if words to that effect had been inserted in the deed.
But it is said, that the covenants in the deed cannot be considered as the covenants of administrators ; because administrators, as such, could not enter into such covenants, and bind by them the estate which they represented ; and therefore that these covenants must be considered as binding the covenantors in their natural capacities, ut res magis valeat quam pereat.
Admit, however, that the covenants do not bind the estate of the intestate ; it does not follow, to iny mind, that they ought to be so construed, as to bind the defendants in their natural capacities. Suppose that an administrator should undertake, in that capacity, to contract upon a subject, on which the law does not authorize him *156 to contract, but in which he has no personal interest; and that at the time of the contract he should expressly declare to the other party, that he was distinctly to understand, that in no event he was to be personally responsible; he could not certainly be rendered so by law. Yet such an express declaration would not communicate the meaning of the parties with more clearness and certainty, than it is done by the various and repeated expressions in this deed, of the capacity, in which the defendants undertook the contract. If the defendants undertook to contract on a subject, upon which they by law had no power to contract; and they expressly, or by necessary and inevitable implication, exclude all idea of personal responsibility ; and the extent of their authority is equally known to both parties; it seems to me much more reasonable, that their acts should be considered void, than that they should bel deemed to compose a contract totally different from the intentions of the parties. In any event, therefore, whether it was, or was not competent * for the defendants to covenant as administrators, so as to bind the estate which they represented, I think that they are not bound in their natural capacities ; because it certainly was not intended by the contract that they should be.
But I do think that, by the statute, administrators, authorized by a license of court to sell the real estate of their intestates, may, by covenants, bind the estate which they represent, to respond for the unsoundness of the title.
By the common law, an administrator can in no case sell the real estate of his intestate; and all the authority, which he has for that purpose, is derived from the statutes. The legislature might have authorized an administrator, upon a sale of the real estate of his intestate, to enter into the usual covenants to indemnify against a failure of title; and it is reasonable that it should be done ; for it will frequently enable him to sell for a better price. Where estates are not insolvent, the sale is only of part; and why should not the residue be holden to make good 'a failure of title ? And even where the whole is sold, upon an apparent insolvency, other effects may afterwards accrue or be discovered; and I know no reason why they also should not be holden. The only question in this regard is, whether, by a just construction of the statute, a power so to covenant is given.
The authority given to executors and administrators to make deeds is expressed in very general terms. They are empowered to “ make good and sufficient deeds of conveyance.” What is a good and sufficient deed of conveyance?—There ought to be a liberal construction of an act, made for such equitable and beneficial purposes, as that under consideration. Now, when a man undertakes *157 to make “ a good and sufficient deed ” of his real estate, ought it not to be understood, not only that it shall be good and sufficient to convey, but also to secure by the usual covenants against a defect of title ? And why should not the same expression in the act receive the same construction ? I see nothing absurd, inconsistent; or unreasonable, in giving such *a power; and the exercise of it would, I am persuaded, in many instances, enable an executor or administrator to sell on better terms.
That an executor or administrator might reasonably, in the opinion of the legislature, be authorized to enter into covenants in a deed of conveyance of the estate of a deceased testator or intestate, is apparent from the fourth section of the act, (5) by which, in cases where executors and administrators are to make deeds of conveyance, in performance of the contracts of their testator or intestate, it is provided that the executors or administrators shall “ make and execute such conveyance or conveyances, to the persons contracted with, as it shall appear the said obligor, covenantor, or contractor would, by his bond, covenant or contract, be obliged to make and execute,” if he were living. Now, if, by the contract to be executed by the executor or administrator, the testator or intestate was bound to make a deed of conveyance with the usual covenants, a like deed must be made, or it would not be such conveyance as the testator or intestate “ was obliged to make.” And I think that “ good and sufficient deed,” in the other instance, implies what is expressed in this.
But it is said, that the defendants have expressly bound themselves, their executors and administrators, and that their executors or administrators, as such, will have nothing to do with the estate of William Dudley. But, I ask, how have they bound themselves, their executors and administrators ? The answer is, As administrators on the estate of William Dudley. And what, according to the good sense and justice of the case, and the intention of the parties, was the meaning? Obviously, in my opinion, that themselves, as such administrators, and that whoever after them should represent the estate, should be responsible upon the covenants. They covenant as administrators, and these covenants are accepted by the grantees; yet it is now said, in behalf of these latter, that instead of being the covenants of the administrators, they are the covenants of the defendants in their private capacities.
* Courts of justice have discovered a laudable zeal in conforming to the meaning of the parties, in the construction of contracts. If they can clearly discern what that is, and *158 its purpose is lawful, they will, in all cases, carry it into effect; and to that end they will supply words, transpose them, or consider them merely as surplusage. — Innumerable cases might be cited, to prove and illustrate these propositions. — I will, however, mention but one — that of Griffith vs. Goodland. (6) The defendant covenanted with the plaintiff, his executors, &c., valeant et jjossinl habere seven parts of all the grains made in the defendant’s brew-house for a certain term. The breach assigned was, that the defendant had, with intent to deceive the plaintiff, put divers quanti ties of hops into the malt, of which the grains were made, by reason whereof they were spoiled. After verdict for the plaintiff, there was a motion in arrest of judgment; but judgment was given for the plaintiff; because “ the intention of the parties is to be considered in all contracts, and it was the intent of the parties here, that the plaintiff should have the grains for the use of his cattle, and they will not eat them, when hops are put into them.” Here the maxim of good sense and experience, qui hceret in litera, hceret in cortice, was properly applied. It was not pretended that the defendant had not literally performed his contract. The breach of the covenant was putting the hops into the malt, and yet the defendant had not covenanted that he would not do this; but the court apply their knowledge of the subject, by their good sense. They knew that the grains were intended for the use of the plaintiff’s cattle, and thence they concluded that mixing the hops with the malt, which had frustrated that use, was against the spirit of the contract, and therefore a breach of the covenant.
It is the business of courts of justice, in cases of contract, first to discover their meaning, and then to compel their execution, or to give satisfaction for the breach of them. On the other hand, it is emphatically true, that * courts will never make contracts for the parties; nor, because they discern that a contract, according to its true meaning, has no legal validity, or in effect will be inoperative, will they, to give it operation, suppose a meaning, which they are sure the parties never intended. Here lies the main strength of the argument for the plaintiff ; that if the covenants in this deed are to be construed merely as the covenants of administrators, they will be inoperative and ineffectual, in an event where the parties intended they should have an effect. What then ? Are we, because, according to the true meaning of the contract, the plaintiff has no remedy, to suppose a contract, which we know the parties never contemplated, to give a remedy against administrators, who have acted honestly in the exe *159 cution of their trust? Very different from this was the disposition of the court in the case of Noble vs. King & Al. (7) where the court refused to give the plaintiff leave to amend his declaration, on the ground that they would not interfere to assist him in an action brought against executors in their own right, who appeared only to have acted in the disposition of the testator’s effects.
I have no doubt that agents, and executors, and administrators, acting as such, may bind themselves personally by their contracts ; but then the reverse of this case must clearly appear, viz., that they intended to bind themselves personally. In the case of Macbeath vs. Haldiman,(8) the words of the defendant’s letters were sufficient to have rendered him liable. They authorized and required the plaintiff to furnish the supplies, for which the action was brought; but it appearing that he acted as a commanding officer, and that the supplies were for the use of the public, it was determined that the action could not be maintained. Ashurst, J., said the question must be, what was the meaning of the parties at the time of entering into the contract ? He said, that a person acting in the capacity of an agent may undoubtedly contract in such a manner, as to makk himself personally liable; and that brought it to *the true question here, namely, whether, from any thing which passed between the parties at the time, it was understood by them, that the plaintiff was to rely on the personal security of the deféndant. And Lord Mansfield observed that the only question before the court was, whether the defendant was liable or not in that action. If he was, the plaintiff must recover ; if not, no consideration respecting the plaintiff’s remedy against any other party could induce the court to make him so. This case proves that whether there be or be not a remedy against another, cannot be taken into consideration, and that the only question, in a contract, is, what was the meaning of the parties; and the case compares in all respects with that under consideration, so as to comprehend the whole ground, on which it ought to be determined.
In the case of Unwin vs. Wolseley, (9) the defendant by his deed entered into covenant, by which he agreed, on account of the Icing, to do certain things, and that the government should be answerable for a certain sum of money in a certain event. The defendant, in the beginning of the deed, styles himself “ senior officer of his majesty’s ships and vessels at St. Helena.” It does not appear from the case, that he had any authority, except what resulted from his situation as naval commander at that station, to enter into the contract on behalf of the government; nor was it pretended that *160 the plaintiff had any other remedy to enforce justice ; yet the court determined that the action could not be supported, because the defendant meant to contract as the servant of government, and not to bind himself personally. There the defendant covenanted “ on account of the king; ” here the defendants covenanted “ as administrators.” By what ingenuity can we discern a distinction, which shall exempt from personal responsibility in the one case, and bind in the other ?
The case of Hodgson vs. Dexter, in the Supreme Court of the United States, (10) was decided on the same principles.
The action was on an indenture of lease. It does * not appear by the deed for what purpose the lease was made ; but by the defendant’s plea it appears that it was made for the use of the war department, of which Mr. Dexter was then secretary. The lease is made to “ Samuel Dexter and his successors ; ” and in the premises Mr. Dexter styles himself “ secretary of war; ” and in the several covenants he binds himself and his “ successors.” The court determined that the action could not be maintained ; and, after stating the circumstances under which the lease was made, they say that the intent of the officer to bind himself personally must be very apparent indeed, to induce such a construction of the contract.
And in the case of Brown vs. Austin, (11) this Court unanimously came to a like decision ; and does not the" reason, on which these cases were decided, apply as strongly in the case of an administrator, acting in autre droit, as in that of a public agent ?
There is not one of the cases which have been cited, where the plaintiff had a legal remedy, unless the contract was construed to bind the defendant personally. That circumstance therefore, in the case before us, is no reason why covenants should be construed as personal. If, in this case, it be true that the defendants could not, as administrators, bind those who might succeed them in the administration of the estate of their intestate, neither could Mr. Dexter bind his successors. The incapacity, then, of the defendants, to render valid what they undertook to do, is no good reason why their covenants should, against their manifest intention, be construed as personal.
After all, we must come back to the true question, — Did the defendants intend to contract in their natural capacity? Were they so understood, at the time of the transaction, by the grantees ? I can hardly imagine any language, by which they could more clearly have expressed their meaning to contract exclusively in their *161 capacity of administrators. In the commencement of the deed they announce the character in which they mean to be understood * as acting; and indeed but as administrators they had no capacity of acting with effect, for the purpose which they undertook. In all their covenants, they declare that they assume the obligation which they import, as administrators ; they complete the instrument by their signatures as administers ; and as administrators they affix seals. There was no consideration, why they should render themselves personally liable upon their covenants; no reason has been suggested, and it is believed none can be, why they should assume so dangerous a responsibility and hence I conclude that such was not the meaning of the parties.
There are cases, in which the covenants have been adjudged void, because they were made without consideration; and a performance of them would be unreasonable. I will cite one case to this effect, because it is in principle analogous to that under consideration. I refer to the case of Frontin vs. Small. (12) It was an action of covenant. The plaintiff declared, that whereas, by a writing of agreement, made between herself, attorney to James Frontín, of the one part, and the defendant, of the other, she, as attorney to James Frontín, demised to the defendant a house for years; and that the defendant, for himself, his heirs, executors, and administrators, covenanted that he would pay a certain rent to James Frontín ; for the non-payment of which the action was brought. The court determined, 1. on the authority of Combe's case, (13) that if an attorney has a power, by writing, to make leases by indenture for years, &e., he cannot make an indenture in his own name, but must do it in the name of his principal; and therefore that it appeared, upon the face of the declaration, that the lease was void: and, 2. that the lease being void, it followed as a consequence, that the covenant to pay the rent was void also, and that the plaintiff could not maintain the action.
This reasoning is the plain dictate of common sense and justice ; and it is not stronger than the case under consideration, * which is an attempt to render the defendants liable upon a contract for the performance of obligations, which we know they never assumed.
Although it is generally true that a deed imports a consideration, yet, if, from the deed itself, it appears there was no sufficient consideration, the maxim of nudum pactum, ex quo non oritur actio applies, as well in cases of specialties as of other contracts. This appears from the case of Frontín vs. Small, which I have just cited. There *162 the lease was the consideration of the covenant to pay; and because the lease was void, the court said that it followed, as a consequence, that the covenant to pay was void also. And in the case of Rann & Al.. exrs., vs. Hughes, Admx., (14) in the House of Lords, Lord Chief Baron Skinner, in delivering the opinion of the judges, said, “ It is undoubtedly true, that every man is, by the law of nature, bound to fulfil his engagements. It is equally true, that the law of this country supplies no means, nor affords any remedy, to compel the performance of an agreement made without sufficient consideration; such an agreement is nudum pactum, ex quo non oritur actio.” Here the position taken is in the most general terms, that an agreement made without sufficient consideration is, by our law, nudum pactum, ex quo non oritur actio; and although, if it be by deed, the mere want of consideration cannot be averred and proved, to defeat the action, yet if it appear on the face of the deed, as in the case of Frontin vs. Small, no action can be supported.
In the case of Rann vs. Hughes, before cited, it was the opinion of the judges, that the consideration must be coextensive with the-promise, to render it binding, so as to make an administrator liable de bonis propriis.
In the case of Pearson & Al., Assignees, vs. Henry, Admr., (15) it was determined that the promise by an administrator to pay the debts of the intestate, if there be no assets, is nudum pactum.
Let these principles be applied to the case before us.
*The defendants, as administrators, being authorized to sell, as such, make the deed under consideration. There was not a circumstance known to them, that was concealed from the purchasers. Not a farthing of the purchase money was retained to the use of the defendants. They had no personal interest whatever. They neither gained nor lost by the soundness or unsoundness of the title of their intestate; — and all this appears on the face of the deed. Where, then, can be discerned the sufficient consideration, which ought to bind them to respond, with their own property, upon these covenants ? — Every thing relative to the contract is apparent on the face of the deed ; and from it, it is clear that there is no legal or equitable consideration, to substantiate the claim made on the part of the plaintiff.
But it is said to be a general principle, that when a man undertakes to act on an authority, which he does not possess, he shall, in a contract made upon that basis, be answerable in his private capacity. And the principle is a reasonable one, inasmuch as the assumption is in itself a breach of the contract. This principle *163 governs that class of cases, where executors, administrators, and others contract nominally in those characters, in instances not authorized by law. Thus, if A, as the agent of B, promise C, when in fact he is not B’s agent, we all feel that, for the falsity and deception, he ought to be responsible in his private capacity.
That, however, was not the case here. The defendants declared no falsehood ; they practised no deception ; they did not undertake to act on an authority they did not possess. On the contrary, they possessed the authority which they assumed ; which was, to sell the equity of redemption ; and both parties thought that the administrators might, in virtue of that authority, enter into the covenants which they did, in their capacity of administrators. That this is a true representation, no reasonable mind can doubt. If there was a mistake of the legal powers of the administrators, it was equally the mistake of both parties ; and can it * be right, that one should derive a benefit and the other suffer an immense loss from it ? ' The parties were in pari conditions, and the rule then is, melior est conditio prossidentis. There is no reason, why one should be relieved at the expense of the other.
I will now consider these cases, which have, upon a pretty laborious and extensive research, appeared to me to afford the most plausible arguments in support of the plaintiff’s demand.
The case of promissory notes, when passing to and through the hands of executors and administrators, has been thought to afford a ground of argument, in this case, in favor of the plaintiff. The law seems to be settled, that if a note be assigned to an executor or administrator, as such, that he can maintain an action upon it in that capacity; but if it be endorsed by one as executor or administrator, the endorsee may maintain an action against him in his private capacity; and hence it is said that, in this instance, the contracting as executor or administrator will not screen a person from being responsible in his private capacity. The position is true; but here, on one hand, it produces no inconvenience or risk; arid on the other, it is a necessary part of the system of negotiable securities.
It produces no inconvenience, and exposes to no risk. When an executor holds a promissory note, if it truly represents cash, he may convert it into money. If he assigns it, and the endorsee, in failure of payment, recurs to the executor, he has nothing to do, but to exchange the money, which he has Received, for the note he has assigned. In such a case, without loss, every thing is reinstated as it was. If on a recurrence the executor refuses to pay, he does so .n his own wrong; and there is no reason, why that should be a charge on the estate which he represents ; but he alone ought to sustain it. There is, then, neither inconvenience nor risk in render *164 ing the executor in such a case personally liable. But it is necessary that he should be so, to perfect the system relative to negotiable securities.
* The great object of the negotiability of these securitj ties is, that they may be rendered a substitute for money, and pass current as a circulating medium. This purpose would be greatly impaired, if not wholly destroyed, if, in assignments of them by executors, they were only liable in that capacity. If there were assets, in JEngland they might be absorbed by debts of a higher degree; and here liable to a probate average and distribution. In such a case, then, an executor or administrator ought, as well from considerations of justice, as of public policy, to be holden liable.
But, how different from that is the case under consideration! There the executor was under no necessity to assign ; here the defendants were bound by law to sell. There it was the duty of the executor to exchange the money he had received for the note he had assigned, the instant after he had notice that it was dishonored ; here the administrators have, years before any recurrence to them, paid all the money that they received, (and were bound by law to pay it,) towards satisfying the debts of their intestate. It was not in their power to secure themselves against this event; and there is no principle of public policy, which will be satisfied by throwing this loss upon them.
The case of Appleton vs. Binks (16) was covenant on articles of agreement, whereby the plaintiff, in consideration of a sum of money paid by Lord Rokeby, had covenanted to convey to him certain real estate, &c. In consideration whereof, the defendant, for himself, his heirs, executors, and administrators, on the part of Lord Rokeby, covenanted that Lord Rokeby, his heirs, fyc., should pay, &c., and proper breaches being assigned. There was a general demurrer and joinder. Judgment was rendered for the plaintiff.
In that case, the articles of agreement were sealed with the seal of the defendant; and he expressly covenanted for himself, his heirs, &.c.; whereas, in this case, the defendants affixed the seal of the administrators ; and they had authority to affix it. They did not covenant for themselves, but they covenanted in their capacity of administrators; * as indeed I think they had authority to covenant. The case of Appleton vs. Binks seems to me to be no more than the common one, of one man’s undertalcing that another shall perform.
There have beep two cases determined in this Court, which may appear to deserve some consideration. I allude to the cases of Tip *165 pets vs. Walker & Al., (17) and that of Thatcher vs. Dinsmore. (18)
The case of Tippets vs. Walker & Al. was covenant on articles of agreement made between the defendants, a committee appointed by the directors of a turnpike corporation, and the plaintiff. There were mutual agreements, and on the part of the defendants, to make certain payments of money, and they affixed their seals. In how many respects, and almost all of them substantial, does that case differ from that now before us ! The defendants did not undertake to contract as a committee; they were not, in fact, a committee of the corporation ; they made their agreement, they covenanted, and bound themselves in their own names and capacities; and they had no authority to contract in any other; and they affixed their own seals. So immense is the difference between the two cases. And this difference affords all the ground, on which the court proceeded in deciding that case. They say, “ This is not like the contract made by an agent for the public, and in the character of an agent; that the decision of the cause must depend upon the construction of the deed. If the defendants have by their deed personally undertaken to pay, they must be holden ; to the agreement the defendants have not put the seals of the directors, nor the seal of the corporation, but their own seals; it is therefore their deed; and if it be not their covenant, it is not the covenant of any person or corporation, and the apparent intent of the plaintiff to have his payment secured by a covenant will be defeated. The defendants do not describe themselves as a committee of the corporation, but of the directors appointed to contract. The corporation * is not therefore bound by this contract, unless it gave the directors, its immediate agents, a power to substitute agents under them, by whose contracts it should be bound. But this does not appear, and we cannot presume it without evidence. The directors are not a corporation, but the agents of one ; and if answerable, are answerable for their personal contracts as private persons. The contract before us is a contract of some indi . vidual persons for others; and if they have bound themselves, they must look to their principals for indemnity. But they have expressly hound themselves
These were the considerations, which induced the court to the decision which they made in that case; and it may be safely affirmed, that there is not one which is pertinent to the case now under consideration. It was the contract of the defendants ; they expressly bound themselves; they had no authority to bind any *166 one else ; they affixed their own seals ; and it was the apparent intent that the payments, which they undertook to make, should be secured by the covenant. That case, then, can be no authority for the decision of this in favor of the plaintiff.
As to the case of Thatcher vs. Dinsmore, I was not a party to its decision, nor did I ever hear of it until I saw it in print. But I am not disposed, upon this occasion, to call in question its authority. In that case, it was determined, that the guardian of an insane person, who had given promissory negotiable notes to the plaintiff, for the proper debt of his ward, and expressed in the notes, that he did it as his guardian, was bound in his private capacity. The court proceeded upon the principles, that the guardian could not, on his own contract, in his capacity of guardian, render the estate of the ward liable to be taken in execution ; that a negotiable promissory note, given in consideration-of a simple contract debt, discharges it; and upon this fact, that the guardian, at the time he made the promise, had sufficient assets to discharge it. It might, then, perhaps, be reasonable to say, that the defendant in that *case should be answerable in his natural capacity ; but it is sufficient for me to say that that case, in its prominent features, has no likeness to this. In that case the defendant was not authorized to contract as guardian, and the contract would have no operation, but as the contract of the defendant in his private capacity. — In this case the defendants had a power to contract, and the contract had its intended effect; it conveyed the estate. In that case an antecedent debt was extinguished; not so here ; and there the defendant had assets for his indemnification. From those principles and facts the court inferred the liability of the defendant; and neither of them has any relation to the case before the Court.
But the consideration of absurdity, which the claim of the plaintiff involves, has always struck my mind with great force, as a conclusive reason why he should not recover. The absurdity I mean is that of making two contracts of one, and two deeds of one. The great and main purpose of the deed was, that it should operate as an instrument of conveyance ; and for that purpose it must be, as was the intention, the deed of the administrators. Should it have become necessary to set forth a title, derived under the deed, in pleading, the deed must have been alleged to be the deed of the administrators, and the seals their seals ; and the exhibition of the deed would doubtless support these allegations. The deed, then, certainly is the deed of the administrators, and the seals their seals in that capacity. Can the deed, then, be the deed of Thomas Williams and Joseph Williams, in their private capacities ? This would *167 be of one contract to make two contracts, of one deed two deeds, and to double the number of the seals. I do hope that our law, which I have been proud to consider as the road to justice, under the directions of sound reason and common sense, will not conduct us into such a labyrinth of absurdity.
In the case of Barry vs. Rush, (19) it was determined that the defendant, who, as administrator, had bound himself, * his heirs, &c., to another as executor, to abide an award, was personally bound, and could not plead plene administravit. But the reason, on which that case was decided, as appears by the report of it, and also by the explanation given in the case of Pearson & Al. vs. Henry, Admr., before referred to, was because the defendant had bound himself by his deed. It was his deed and his seal; whereas this is not the deed, nor these the seals, of the defendants in their private capacities; but the deed is the deed of the administrators of William Dudley, and the seals their seals.
On the whole, if the meaning of the parties can be rendered certain by words, we may say with confidence, that neither did the defendants intend, nor "could it be supposed by the grantees, that they did intend, to contract in their private capacities, and that therefore, if we are to be at all directed by what the parties meant, it is certain that the plaintiff cannot recover.
As I have never entertained a doubt what the decision in this case ought to be, the length of this opinion, and the labor bestowed upon it, can only be excused by the ingenuity of the argument in favor of the plaintiff, and the zealous sincerity with which it was enforced. Upon the whole, I am of opinion that such entries be made on the issues in law presented by the pleadings, as to entitle the defendants to judgment. .
I have not thought it necessary to state particularly the several issues in law presented by the pleadings, because they all terminate so as to show, if my opinion be correct, that the defendants are entitled to judgment. Nor have I thought it necessary to declare the result of my consideration of the other points, which were, with much technical learning and great ingenuity, exposed and enforced by the defendants’ counsel: because I feel satisfaction in coming to a result, upon principles which will do exact justice to the parties, by conforming their contracts to their understanding of its meaning, at the time it was formed.
* Sewall, J.
This action was brought for analleged breach of covenant of general warranty ; and the defendants are charged personally, in their private capacities, upon *168 a covenant expressed in a deed of bargain and sale, made by them as the administrators of the estate of William Dudley, déceased, intestate and insolvent.
The defendants have had oyer of the deed containing their covenant, and of another conveyance respecting the same lands and tenements, referred to in the recitals of their deed ; and these instruments, copied upon the record, contain, as it appears to me, the whole case to be decided. For the breach, alleged in the declaration; is neither traversed nor avoided by any material fact averred in the multiplied pleas in bar, containing traverses and averments of conclusions in law.
The defendants, in their deed, undertake to convey to Increase Sumner and Elizabeth Sumner, and to their heirs and assigns forever, an equity of redemption, which the said Dudley had at his decease, in certain lands and tenements described-, and being the same, which he in his lifetime had conveyed to the said Thomas Williams in mortgage, and as security for a certain sum of money remaining due to him. And it further appears, from the recitals in the deed, and from the conveyance by Thomas Williams, introduced upon this record, that the said Increase and Elizabeth, either before or at the time of their purchase of the said equity of redemption, became the assignees of the said mortgage, and paid therefor a certain sum of money to the said Thomas Williams.
To the conveyance of the equity of redemption certain covenants are annexed, in these words : “ And we, in our said capacity of administrators, do covenant with the said Increase and Elizabeth, their heirs and assigns, that we, as administrators, are lawfully seised of the premises; that they are free and clear from, all encumbrances by us, or with our knowledge, made, saving, fyc.; that we have, in our said capacity, good right to sell and convey the * same to the said Increase and Elizabeth; and that, as administrators as aforesaid, we will warrant and defend the same to the said Increase and. Elizabeth, their heirs •and assigns forever, against the lawful claims and demands of all persons.”
In this action by Elizabeth Sumner, the surviving grantee, commenced in her lifetime, and now prosecuted by her administrator, the breach of covenant is alleged in three several counts, with some little variation to be noticed hereafter, but otherwise in these words ; “ the said Thomas and Joseph have not warranted and defended, &c., for that one Joseph Dudley, &c., long before, &c., and at the time, &c., and continually until the eviction, &c., had good and lawful right and title, &c., as eldest son and heir male of the body of William Dudley aforesaid, by virtue of the gift of one Joseph Dudley, deceased, made to the said William Dudley, and *169 the heirs male of his' body;” and then an eviction by suit, judgment, and execution, under that title, is set forth and averred.
This breach, if suitably alleged, is to be taken as confessed by the pleadings, which refer to the consideration of the Court the general inquiry, whether this action is maintained against the defendants, upon the case disclosed.
The deed of the defendants is pursuant to a license and authority granted to them to convey the real estate, of which their intestate died seised in fee simple, for the payment of his just debts, according to the provisions of the statutes in that case. In obtaining and exercising this authority, they necessarily acted as administrators ; the consideration paid for the equity of redemption conveyed by them, availed to the creditors of William Dudley, and, it may be presumed, has been paid over to them before this action was brought; and in their deed, according to the words of it, they not only convey as administrators, but they profess to covenant, and even to sign and seal, as administrators.
In this view of the case, the question arises, whether the * defendants personally, and in their private capacities, are liable for any breach of the covenants expressed in their deed.
After much deliberation, the Court continue divided upon this question ; and that I may endeavor to justify the opinion I have adopted, I shall examine it rather more at large, than otherwise would have been necessary or convenient.
The defendants contend, that they conveyed and covenanted in a character of agency; and therefore that the effects for which they acted, that is, of William Dudley, in their hands to be administered, if any there were, became liable for their transactions ; or, at any rate, that a deed given and accepted as a deed by administrators, can only operate, either for the- conveyance or covenants therein, according to their power to charge the effects of their intestate ; and that no other intent of the parties can be supposed or admitted, even if certain clauses of the deed are rendered, by this construction, altogether vain arid nugatory.
The contracts of agents, whether, in public or private concerns, as of a person acting officially for the public, or of a servant in the business of his master, made according to their authority and with a disclosure of their agency, do not render the agents personally liable; unless by an express stipulation, in which the agent engages his own responsibility and credit. This rule applies, however, only where a principal is disclosed, and when the contract may be understood to have been made with him according to the obvious in tentions of the immediate parties.
*170 In this respect it seems impossible to apply the rule to the contract of an executor or an administrator, in administering the estate or effects of deceased persons. The office of an administrator is rather a trust, than an agency. The personal estate of a deceased testator or intestate is vested absolutely in the executor or administrator. • The real estate is not vested in them by virtue of their office ; but a license to sell for payment of debts, obtained pursuant to *the statute, vests in the executor or administrator an authority and trust, to be executed upon their own responsibility. In exercising an authority of this description, an administrator is not the representative or agent of any other person ; and to suppose the other effects of the deceased liable for the contracts of an administrator, in selling the real estate of his intestate, would be productive of the utmost perplexity' and confusion.
Several decisions have been cited in the argument for the plaintiff, to show that in the sale or disposal of the personal estate, an administrator renders himself personally liable; and this is according to the course of our daily and uniform experience upon this subject. Thus, in assigning a negotiable note or bill of exchange, payable to his intestate or his order, although an administrator makes his endorsement in that capacity, and the transfer has effect by virtue of his office; yet the guaranty of payment, implied by the custom of merchants, is the personal contract of the administrator, for which he is liable de bonis propriis. (20) An administrator is liable in the same manner upon his express contract made for the debt of his intestate, as in the case cited at the bar, of Barry vs. Rush; (21) where an administrator became bound for the performance of an award upon controversies and demands between the intestate and the other party to the submission. (22) And the decision was not upon the ground, that the bond was an admission of assets; but because he had expressly bound himself In that case, as in this, the party finally made liable had bound himself as administrator to pay. But the naming a party, otherwise sufficiently described, as an executor or administrator, may be surplusage ; and is so held where the words are unnecessary to the contract or to a demand by or against him, in a declaration or suit. (23)
In short, the general principle undoubtedly is, I think, that an administrator has no power of charging the effects in his hands to be administered, by any contract originating with himself; and it seems to be clearly understood, by the * de *171 cisions which have been cited, that his contracts in the course of his administration, or for the debts of his intestate, render him liable de bonis propriis. (24)
But it is contended, for the defendants, that whether the administrators had, or had not, a power of charging the assets of the deceased William Dudley with the covenants in this deed, yet the exposition of their character and capacity in the contract itself, and the subject matter of it, necessarily require a construction, which discharges the defendants from any liability upon the failure of the title, which they undertook to convey; and that the covenants of the defendants must have been intended by them, and accepted by the grantees in the deed in question, either as covenants void in their operation, or as covenants which respected the acts of the grantors only.
Contracts under seal avail by their solemnity, even when voluntarily made, and without any consideration to the party engaged. It is said indeed, that on covenants under seal, merely voluntary nominal damages only are recoverable at law; but a covenant by one for the debt or duty of another, or where the party, in whose favor the contract is made, foregoes some advantage, or incurs an expense, or suffers some loss in consequence of placing his confidence in another’s undertaking, — no case of this description can be viewed as a contract merely voluntary, or estimated as a covenant without consideration. (25)
Warranties or stipulations of property and title, in sales of goods, or bargains and conveyances of real estate, arise sometimes by implication of law, and are sometimes expressed, and make a part of the contract. Whether, upon a sale by an executor or administrator, of the effects of his testator or intestate, with a full disclosure of his character and trust, a stipulation of title and property would arise by legal implication, to affect him personally, is a question we are not called upon at this time to determine. In the case at bar, the plaintiff relies upon an express warranty of the title or interest purchased; and this covenant forms an important part of the con tract contained in the deed of the defendants.
* An administrator acting under a license, and exercising an authority to sell the real estate of his intestate, is not required, by any duty of his office or trust, to enter into a personal covenant for the absolute perfection of the title, which lie undertakes to convey ; or for the validity of the conveyance, beyond his own acts. It will be admitted, however, that he is at *172 liberty to do it, if he chooses thus to excite the confidence of purchasers, and to enlarge the proceeds of the sale; and that he may be competent to engage his own credit collaterally in the conveyance ; in so much as that a contract to this effect is not unlawful or void in itself for any absurdity or inconsistency.
In the case supposed of a sale by an administrator, a covenant of title is not perhaps to be inferred upon the mere implication of law, as upon the words dedi or demisi. I say perhaps, for in the case of Knipe vs. Palmer, (26) which was the case of a lease by the committee of a non compos, made in his own name as committee, nil habuit in tenementis was holden to be a good plea for the lessee; yet the court inclined to the opinion, that the committee, as lessor, was personally liable upon the covenant in law implied from the word demisi; but this question was avoided in the decision.
If the deed contains express covenants of a limited nature, then it is clear that no general covenant of title can be implied. It the deed contains express covenants of the administrator, as in the case at bar, he is certainly not to be holden beyond the legal import and effect of such covenants. If these are doubtfully expressed, and the words admit of a construction which restrains the covenants to his own acts, this may be reasonably conjectured to be the true construction ; for this is the most natural, and therefore the most probable intention of the parties in the actual circumstances of the case. The rule then applies, that where sentences are ambiguous, or capable of several significations, conjectures are necessarily resorted to, to determine the meaning of the parties; and conjectures for * this purpose may be drawn from the subject matter, and from the circumstances of the contract. (27) This rule is, however, applicable only where the sentences, in which the parties have expressed themselves, either from the terms or their arrangement, leave their intentions doubtful. For otherwise the most usual and natural import is to be given to the instrument or evidence of the contract; and to resort to rules of construction would be to substitute probable conjectures for evidence that is direct and unalterable. Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba expressa jienda est.
I have stated the words of the deed of the defendants, in which their covenants subjoined to their conveyance, are expressed; and I have heretofore examined them very deliberately and carefully. Among their covenants of seisin, of a good right to sell and convey, and to warrantand defend, there is an intermediate covenant against encumbrances restricted to the knowledge and acts of the defend *173 ants. Without resorting to the mechanical rule, as it may be called, of determining the sense by a particular arrangement of words and sentences, which is certainly not always conclusive; and taking all these covenants together, and giving every possible effect to the intermediate covenant, I have been unable to perceive any restriction in sense or expression, to be drawn from it to the other covenants in this deed. If it were possible to apply the restrictive words, in the intermediate covenant, to the preceding covenant of seisin, or to the subsequent covenants of authority and of warranty; if this last, being the covenant immediately in question, were even rendered thereby doubtful or ambiguous, as to the intention of the parties, there would be a necessity of resorting to probable conjectures, which might be very properly drawn from the subject matter, and the circumstances of the contract. The covenants preceding, and the covenants subsequent to the covenant against encumbrances, are not of the same import. (28)
* Covenants respecting the seisin, the power to convey, and the general title, made without restriction, may well consist with a restrictive covenant against encumbrances. (29) And taken altogether, the several covenants recited stand unconnected in sense and expression, and uncontrolled the one by the other: and it is impossible to doubt of the meaning and import, generally affixed to the words and sentences, in which the covenants in the deed of the defendants are expressed.
Another objection to this action is a supposed merger oy extinction of the estate or interest, whatever it was, conveyed by the deed of the defendants. This being a sale of an equity of redemption to the assignee of the mortgagee, these several interests, separate and distinguishable, while existing in different persons, became united by these conveyances to the same persons, and in them constituted in effect but one title; and the inference is, that the covenants respecting the equity of redemption became thereby extinct; and that an eviction from the bargained premises, of which only an equity of redemption was the subject of the conveyance by the defendants, was no breach of their covenant.
But this objection has been sufficiently answered. The remedy now sought upon the deed of the defendants, is not the remedy given upon a warranty at common law, considered as a covenant real, entitling the grantees to a render in value of other lands of the warrantor in case of an eviction from the lands conveyed aud warranted. Nor is this a warranty relied on as a bar and title in itself, against the heirs, lineal or collateral, of the warrantors.
*174 The cases cited for the defendants in support of this objection are all of that description, in which it is obviously important to ascertain the title of the party claiming under the warranty; and those remedies are inapplicable perhaps to the conveyance of an equitable interest, as distinguished from the legal and absolute title. (30)
* The case at bar is an alleged breach of an express personal covenant, annexed to a conveyance of an interest, valuable in legal contemplation, of a value acknowledged by the consideration received for it by the defendants, for which their conveyance of it was made. It was bargained and sold by them, and purchased by Increase and Elizabeth Sumner, as a part of the title, as a subsisting interest in the lands and tenements mortgaged by William, Dudley in his lifetime. The fact is now confessed by the defendants, that William Dudley was tenant in tail only of the lands mortgaged. This right in equity of redeeming therefore expired with him, as the law of the land was at the time of his death. Or, if we suppose a right in equity gained in fee simple, of which William Dudley may be technically said to have died seised, and that this was a title which the defendants had authority to convey as administrators, yet they have not warranted or defended it; nor could it be warranted and defended by their deed against all lawful claims and demands whatsoever; for the elder title of the heir in tail, and the eviction under it, are averred in the declaration, and confessed by the defendants in their pleadings.
These observations apply also to the objections which have been raised against the form of the present action, from a supposed variance of the counts from the deed of the defendants. Whatever may be the form of that objection as made to the first count, it has no foundation, I apprehend, when applied to the second and third counts; where the premises, or the interest which the defendants sell and convey in the lands and tenements described, are stated in the words of the deed; and the covenant upon which the action is brought, and the breach of it, are set forth and assigned by the same recourse to the words of the deed. In the strictest comparison, therefore, of the second and third counts with the deed of the defendants, there is no variance. But this strictness is not required after oyer, and a plea in bar upon the merits.
It is sufficient, *if the deed is competent evidence to support the declaration.
The objection, which has been considered, arising upon the nature of the interest conveyed by the defendants, and the fact *175 that Increase and Elizabeth Sumner claimed and held by another title, and as assignees of the mortgage of William Dudley, in his lifetime, the lands and tenements described in the deed of the defendants, their conveyance extending only to a remaining interest therein, will deserve further attention in the inquiry of damages, if this action should be finally maintained for the plaintiff, and the value of the premises at the time of the eviction is to be considered as the measure of the damages recoverable therein.
The case may be supposed of general covenants of title and warranty, annexed to a mortgage in fee simple, to an assignment thereof by a mortgagee, and to a conveyance of the equity of redemption by an assignee of the mortgagor made also to the assignee of the mortgage; and an eviction by an elder title, which avoids the mortgage and the assignments. If the value of the premises at the time of the eviction is to be the measure of damages, upon which of the deeds is the value to be assessed, or by what apportionment, if it is divisible according to the interest conveyed by the several deeds ?
If the deed of the defendants was void in its creation, because they acted without authority in selling and conveying an estate of which their intestate was tenant in tail only, and therefore not liable for the payment of his debts, as the law then was; their collateral covenant, broken when it was made, renders them liable for the consideration money only, and the interest thereof from the time of the contract, with the addition of the expenses incurred in defending the suit. But as no direct argument upon this question has been gone into, I have not come to a decisive opinion upon it.
Upon the whole, the covenant in question, to warrant and defend, is to be construed in this case a covenant of * title in William Dudley, effectually conveyed by the deed of the defendants, to avail against the lawful claims and demands of all persons. A breach of this covenant is sufficiently alleged in the declaration, or at least in the second and third counts. The title conveyed and warranted is described as a right of redeeming lands and tenements subject to a mortgage. An eviction by an elder and lawful title, from the lands and tenements described, sufficiently set forth and averred, justifies the general averment of a breach, that the defendants have not warranted and defended the interest therein conveyed by them, and which they covenanted to warrant.
Nor is it a valid objection to a right of action upon an express personal covenant, that the particular mode of interest described in the conveyance, to which the covenant is annexed, is united in the grantee with another title, inconsistent with the continued separation *176 of the interest, as a subject of legal contemplation, or as an interest for which a specific remedy is maintainable. A failure of the whole title is a breach of a covenant to warrant any part or interest therein against all lawful claims; and in an inquiry of damages, the nature and value of the interest conveyed, to which the covenant was annexed, is to be considered and estimated.
A covenant of this description, annexed to a conveyance by administrators, acting under a license to sell the real estate of their intestate, although expressed to be made in that capacity, is necessarily a personal covenant, for which they are liable de bonis propriis, because the effects of the intestate are not liable to the contract of an administrator, as such, and because an express contract of that kind by an administrator can have no other legal operation; and when clearly and definitely expressed, no interpretation contrary to the words of a solemn instrument is admissible.
Upon the whole, my opinion is, that the plaintiff is entitled to judgment upon the several issues in law joined in the action.
* Parker, J.
I shall confine my observations to the great question in this cause, whether the defendants are personally answerable in damages for a breach of the covenants contained in the deed, which makes a part of the pleadings; being satisfied that, if they are so answerable, the form of the declaration, in some one of its counts, is sufficient to entitle the plaintiff to recover.
The deed was made by the defendants, in the capacity of administrators of the estate of William Dudley, and purports to be pursuant to a license obtained from the Court of Common Pleas to sell the estate of which the said William Dudley died seised; — the object of the sale was to pay the debts of the deceased; — and it must be presumed that the purchase money, which constituted the consideration of the deed, has been appropriated to the purpose for which the sale was effected, and not to the personal benefit or advantage of the defendants. Peculiar caution is observed also in all parts of the deed, to avoid the supposition that the defendants intended to take upon themselves any personal liability; and in the execution of the deed they, each of them, style themselves administrators on the estate of William Dudley.
From all which it must be inferred, that the grantors intended to guard against any recurrence to themselves or their estates, in case of a failure of title ; and I think the inference equally clear, that the grantees themselves did ' not rest upon a supposed personal liability of the grantors for their security; but both parties believed that whatever virtue there was in the covenants, the estate of Wil *177 Ham Dudley, and not those of the defendants, was to be affected by them.
It is more probable, however, that neither party, when entering into the contract, calculated upon a future necessity of resorting to the covenants. William Dudley died in possession of the estate, and it had been long in the Dudley family. The title of the heir in tail, which ultimately ousted the grantees,.was then dormant; and an accidental * discovery of the will of his ancestor, and of the common recovery under which he held, long after the sale by the administrators, afford a probability that the grantors and grantees were equally unsuspicious of any defect in the title of the estate, about which they were negotiating. This supposition is much more honorable to the parties, than that the grantors should have known that they were selling a.rotten title on the one hand, or on the other that the grantees should have known that the legal effect of the covenants was to bind the defendants personally, notwithstanding the peculiar pains taken to avoid such liability — a supposition extremely injurious to the memory of one of the most honorable and upright men that have lived in our community.
I am therefore disposed fully to agree with the counsel for the defendants in the position, that the nature of the transaction, the character in which the grantors contracted, and the language of the instrument, all concur in proving that it was manifestly against the intention of the parties, at the time the deed was executed, that the grantors should be held to a personal responsibility upon the covenants. At the same time it must be confessed to be equally clear, that both parties believed that the covenants were to be effectual in case of an interruption of the estate supposed to be granted; although probably neither of them contemplated the happening of such a contingency.
This unforeseen event, however, did happen; and it seems to be clear that the grantees have no remedy against the estate of William Dudley, notwithstanding the covenants made by his administrators. We are therefore reduced to the alternative of declaring the covenants to be void and wholly ineffectual; or of giving them operation against the defendants in their personal and individual capacity.
The objection to the liability of the defendants, which strikes the mind with most force, is, that they will thus be subjected to the payment of damages for defect of title, contrary to their intention when they entered into the contract, * and when they were to derive no personal benefit from the execution of their trust as administrators by the sale of the estate.
This may be a hard principle of the law ; but it results from the *178 application of legal principles, which have stood the test, of time, and which experience has proved to be wise, useful, and necessary. ■— Whenever a man, by an instrument under seal, undertakes to stipulate for another, if lie acts without authority, or beyond his authority, he is answerable personally for the non-performance of the contract. — Such is the case of an attorney stipulating for his principal, not having authority, as in the case of Appleton vs. Binks; — Of the committee of the directors of a turnpike corporation, as in the case of Tibbets vs. Walker; — Of a guardian giving a promissory note as guardian, as in the case of Thatcher vs. Dins-more ; — Of an administrator binding himself to perform an award respecting the affairs of his intestate, as in the case of Barry vs. Bush.
Now, in all these cases, as well as in many more which might be cited, it is manifest that the parties held answerable never intended to make themselves liable; nor is it perceived that they personally received any valuable consideration for their undertaking; and yet it was holden that, as they could not by their act bind those for whom they intended to stipulate, they were bound themselves. Neither is it unjust that men pretending to give a security to others, by assuming a relation which does not belong to them, should supply out of their own means the security which they failed to impose upon their principals ; and this, although they are chargeable with no fraud. For negligence of the rights of others is often a ground of liability without any advantage to the person who is to become responsible.
It is true, that the just mode of ascertaining the legal effect of a contract is, to know the intention of tne parties to it; and much less stress is laid upon the technical expressions in a deed, or other legal instrument, now than * formerly. Indeed, there appears to be little difference, in modern times, in the rules of construction, as applied to wills or deeds. What did the parties mean ? — is the great, question. But, as I apprehend this beneficial rule, it is applicable to clauses and provisions in the instrument, the words of which are of a doubtful import ; and seldom is called in aid to settle the question of the liability of any party to the instrument, when its meaning has been ascertained. An attorney, who contracts for his principal, may mistake his authority, and make a contract beyond the letter of his power. He certainly does not mean to charge himself; and yet he would be chargeable, if any damage arose from the non-performance of his contract. — A sheriff, who should sell an equity of redemption virtute officii, and should enter into covenants respecting the title, would certainly not charge the debtor by his covenants ; but *179 would charge himself, although such was not his intention. — A collector of taxes, who should sell a non-resident’s land agreeably to the tax acts, and should covenant respecting the title, certainly could not bind the owner of the land; nor would he mean to bind himself; for, like the administrators in the case at bar, he would receive no benefit from the sale, acting merely in discharge of a trust, and that, too, perhaps, imposed upon him by law, and not voluntarily accepted, as it must be by administrators. And yet there seems to be no doubt, that he would be personally bound by such covenants.
The case of Bickford vs. Page (2 Mass. Rep. 455) was not dissimilar to the case now before us. Page was a collector of taxes for the town of Parsonsfield, and sold a tract of land belonging to a non-resident proprietor, who had neglected to pay his tax. The deed was made expressly as collector of the town of Parsonsfield, and the authority was recited in the premises. The covenants were similar to those in the deed of the administrators in the present case; and equal caution was used in stating the covenants to be made by him in the capacity in which he acted. It * was a case very strongly contested. I was of counsel for the defendant, and was associated with a gentleman, who never lost a cause by not presenting points sufficient to the court, and who well understood the advantage of special pleading; and yet the cause was defended upon other points doubtful in their issue to us at the time ; and it never occurred to either of us that the defendant was not answerable de bonis propriis for a breach of any of his covenants. It happened that the only covenant broken was the covenant of seisin; so that the damages were inconsiderable. But at that period the distinction in the effect of covenants was not recognized in our courts; and we appre hended that the rule of damages would subject our client to the loss of several hundred dollars, when the consideration of the deed was little more than one dollar, and that went into the treasury of the town, and not into the pocket of the grantor; so that we had every motive to present a question to the court, which would have given the defendant his costs, if it had been determined in his favor.
Now, in point of hardship, a collector of taxes, who is obliged to accept the office or pay a fine, whose duty in raising money by the sale of land is quite as arduous as that of an administrator, whose sompensation for his labor is at least as trifling, will not yield the preeminence to an executor or administrator, who incautiously steps beyond his duty or authority, and may lure people to purchase by offering them covenants of title intended to operate against the *180 estate they represent, but which, by the principles of law, cannot produce the effect intended.
A class of cases has been relied on by the defendants, to show that where parties have contracted in outer droit, although they have failed to bind their principals, they have been discharged from any personal responsibility. The principle maintained in those cases is, that when it appears by the contract attempted to be enforced, that the party charged was an agent for the public, the agent * shall not be compelled by suit to pay, The effect produced in my mind by a contemplation of those cases is contrary to what was expected by the counsel who urged them.
They were all decided upon grounds of public policy, lest the service of the government should be delayed or prejudiced, if its servants should be liable to suits on contracts avowedly made by them on the public account. Now, if the mere intent of these agents not to bind themselves would have been sufficient for their defence, the court would have had no occasion to resort to the dangerous ground of state policy to relieve them ; for it must have been manifest in the several cases of M’Beath vs. Haldimand, Umvin vs. Wolsey, Hodgdon vs. Dexter, and Brown vs. Austin, that the defendants never intended to bind themselves personally, but merely to give those with whom they contracted proper evidence of their demand against the respective governments.
Excepting these cases, which stand as exceptions to the general rule, there does not seem to be a single case, which shows that a man entering into a contract under seal for another, for whom he had no right to act generally, or to the extent of his contract, has been held to be discharged from the burden of his contract, not although, in the apprehension of both parties, he contracted avowedly in outer droit, and was in no wise interested in the consideration of his contract.
This principle seems to be settled beyond question in the law merchant. Suppose a factor, authorized to sell goods on commission, should undertake, without directions from his principal, to warrant the goods to be 'of a particular character or quality, and on their being sent to market, it should turn out that they were of an Inferior quality; can there be any doubt that he would be answerable in damages ? yet there would be many compassionate claims, as that he had only small commissions for selling, that he had settled with his principals, who were unable to refund to *him if obliged so to do, &c. Such a point as this I ruled in the case of Stocker vs. Amory, and I have never heard the principle questioned by any lawyer.
*181 Indeed, there are certain covenants in this deed, which no one could imagine for a moment could be enforced, except against the defendants in their private capacity. Such is the covenant that they were seised in fee simple of the estate sold, — that they had good right to sell. Here also they covenant in their capacity of administrators ; but no one would think of instituting a suit against them in their capacity for the breach of these covenants, any more than if they had covenanted that they were administrators, and it had turned out that no letter of administration was ever granted. It would be no answer to such an action, that their deed was signed by them as administrators only, that they never intended to make themselves liable, that all the proceeds of the sale had been appropriated, and that there were no funds, out of which they could indemnify themselves. The reply to all this would be, You meant to secure us by these covenants, and, as you had no authority to do it. in the form you contemplated, you are bound by your deed to do it yourselves.
This course of reasoning, and the authorities referred to, have satisfied me that the defendants are personally bound by the deed, which they executed as administrators, notwithstanding their manifest intent not to be so bound.
Another question, and a very important one as it respects the consequences of this action to the parties, is, What shall be the construction of the covenant in the deed, for the breach of which the present action is brought? Shall it be taken independently, and have the natural force and meaning of the words, as if disconnected from the other covenants and other parts of the deed ? Or shall it be construed with relation to the whole subject matter, and according to the true understanding of the parties when it was made ?
*The latter is undoubtedly the true rule ; and here I am willing to searcli diligently for the intent of the parties, and to give it full effect when discovered. The fanciful mode of construction once adopted, which depended upon the collocation of the particular clause, to which a restrictive power was attached, has given place to the more sensible rule of taking the whole instrument into consideration, and determining, from a general knowledge of the views and objects of the parties, their meaning in any particular sentence or provision.
In the book which bears the name of Shepard’s Touchstone, (chap. 7, page 163,) but which is supposed to be the work of the eminent Judge Tiodderidge, it is laid down, that if the lessor covenant with the lessee, that he hath not done any act to prejudice the lease, but that the lessee shall enjoy it against all persons, these *182 words ag -,;nst all persons shall refer to the first, and be limited and restrained to any acts done by the lessor, and no breach shall be allowed but in such an act. And the case of Browning vs. Wright, (31) shows that the same principle is recognized in modern times.
Indeed, nothing can be more equitable, than that the situation of the parties, the subject matter of their transactions, and the whole language of their instruments, should have operation in settling the legal effect of their contract; and it would be a disgrace to any system of jurisprudence to permit one party to catch another, contrary to the spirit of their contract, by a form of words, which perhaps neither party understood, but which were introduced by the scrivener more in conformity to some general scheme of conveyancing of his own, than by the direction or in conformity to the wishes of those for whom he was acting.
In the deed before us there are four several covenants. The first is, that the defendants, as administrators, are seised in fee of the estate, which they undertake to sell. A breach of this covenant, according to cases settled, would subject them to a repayment of the consideration money, * with the interest, and no more ; for it was broken the moment it was made, and the grantees ought to have brought their action instantly on the discovery of the defect in the title, and been restored to what they had lost, without waiting for an eviction. (See the cases of Marston vs. Hobbs, and Bickford vs. Page, 2 Mass. Rep.)
The second covenant is, that the premises are free and clear of all encumbrances done or suffered by them or with their knowledge, saving the mortgage. There could be no breach assigned of this covenant, except in some act done by the defendants, tending to defeat the estate; so that had William Dudley, or any of his ancestors, conveyed by mortgage, or otherwise encumbered the estate, by which means it should have been lost or impaired in value to the grantees, there wrouId have been no remedy under this covenant.
The third covenant is, that they had good right to sell; which is a special covenant, amounting to no more than the covenant of seisin.
The fourth covenant is, that, as administrators, they will warrant and defend the same, &c., against the lawful claims of all persons. This covenant, it is contended, obliges them to answer in damages, because the land is taken from the defendants by a paramount title, without any act of their own, and although they knew not of the existence of such a title; and this must be the effect of it, if not *183 restricted by the palpable intention of the parties, as discerned in the other covenants, and indeed in all parts of the instrument. Why should the defendants have restrained the operation of the preceding covenants to encumbrances done or suffered by them, or with their knowledge, if, in the very next, and, indeed, it may be said, in the same sentence, by a general sweeping expression, they were answerable whenever an eviction should take place by any person having title ? This last covenant would certainly compre hend its predecessor, and render the restriction in that wholly nugatory. But effect is to be given to all the words of an instrument, *and the true meaning is to be extracted from a comprehensive vievr of the whole.
But it may be questionable whether, stating the covenant by it self, enough may not be found to show the intent of the parties to be short of a general warranty of the land against all titles. The covenant is, that the defendants will, as administrators, warrant and defend. — Is not the fair meaning of this, that whatever shall be rightful for them to do in their capacity shall be done to secure the title to the grantees?—They are personally answerable for the performance of this covenant, to its utmost legal extent. It comprehends in it a covenant, that they are lawfully administrators, and that they had a right to sell what they had undertaken to sell; and indeed must be construed to be an assurance to the grantees of the title which they conveyed to them. Still, in my apprehension, it falls short of an engagement, at any future time, to defend the grantees against an ouster by a title paramount; but may reasonably be considered as limited and restrained in its operation by the whole coi-text of the deed.
This construction is also aided, when we consider the situation of the covenantors, acting in autor droit, having no personal interest in the transaction, and no inducement to pledge, possibly their whole fortunes, upon an indefinite and illimitable warranty of title to the purchasers. It is not unreasonable to suppose that, in order to facilitate the sale, they were willing to covenant against their own acts, and that they were duly authorized to do what they had undertaken to do; but it is hardly possible to conceive that they would intentionally have bound themselves, to all future time, to pay the value of the estate, in case the title should happen to fail.
Another circumstance in all these covenants will tend to show, that both parties supposed, that whatever effect the covenants were to have was derived from their relation to the estate as administrators; and that is, that they covenant * only for themselves, omitting the usual expressions in general covenants, of their heirs, executors, and administrators. Now, *184 although the omission of these words might not vary the effect of a covenant made by a man respecting an estate of his own, when he intends to bind his estate, yet this, together with the other circumstances mentioned, may help to show the true ground upon which the parties contracted.
The case of Browning vs. Wright, which I before referred to, fully maintains the principles adopted by me, in construing this covenant. The case is not dissimilar. It is so well reported, and the argument of Lord Eldon is such a triumph of common sense over technical niceties, that I would rather recommend the reading of the whole, than to weaken by attempting to epitomize it. In the close of his observations, the chief justice says, the intent of the parties is to be collected from the warranty, the other covenants, and the prima facie nature of a purchase of an estate of freehold; and he says that the covenant declared on was either part of the other covenant, which was special; or, if a substantive covenant, must, by reference to the whole context of the deed, be considered a special covenant. — Justice Buller says, “ He has expressly told us, in oiie part of the deed, that he means to covenant against his own acts, and are we to say he has in the same breath covenanted against the acts of all the world ? If the court is driven to say that these two covenants must stand together, they must do so by pronouncing judgment on the words of this particular clause, and shutting their eyes against all the other parts of the deed.”
I am therefore satisfied upon the reason, and believe that I rest upon sufficiently respectable authority when I pronounce my opinion, that the covenant, upon which this action is brought, means nothing more than is contained in the first covenant; viz., that the defendants were seised of the estate, which, as they could not be in their capacity of administrators, would undoubtedly be construed to mean, *that, by virtue of their authority, they had power over the estate, to transfer it, and convey a good title to the grantees. ■
A question then arises, upon which I have entertained much doubt; viz., whether a breach of the covenant, according to its true construction, is well assigned by setting forth the title of Joseph Dudley, and an ouster by him. If this was a covenant merely against the acts of the defendants, or of persons claiming under them, then there is no sufficient breach assigned. But upon the construction which I give to the covenant, which is that they have a title to convey, or that they were seised or properly authorized to convey ; — then it appears by the pleadings that William, Dudley had no equity of redemption ; and, as they were authorized to sell only the estate of which he died seised,- the covenants were broken *185 as soon as made, and the breach is well enough assigned by showing a paramount title, and an ouster under it; for it is held that no particular words are necessary to the assignment of the breach ; but it is sufficient to show it substantially.
The plaintiff’s replications to the defendants’ first, third, fifth, sixth, and eleventh pleas in bar were thus adjudged good and sufficient, and the defendants’ second, fourth, seventh, eighth, ninth, and tenth pleas in bar were adjudged bad and insufficient.
At the sittings here after this term a jury was impannelled be-ore Sedgwick, J., to assess the plaintiff’s damages, who returned the following verdict, viz.: —
“ The jury assess the damages for the said William II. Sumner. in his said capacity, as follows, that is to say, —
“ If the Court shall be of opinion, that by law the plaintiff is entitled to recover the consideration money mentioned in the deed of the defendants, and the interest thereof from the date of said deed, then the jury assess the damages at the sum of 2391 dollars 71 cents.
“ If the Court shall be of opinion, that the plaintiff by law is entitled to recover the said consideration money, and the interest aforesaid, and also the expenses sustained *by the said Elizabeth in the said suit of the said Joseph Dudley against her, and nothing more, then the jury assess the damages at the sum of 4681 dollars 72 cents.
" If the Court shall be of opinion, that the plaintiff is entitled to recover the said consideration money, with the interest thereof from the time of the eviction aforesaid, with the said costs sustained by the said Elizabeth, and nothing more, then the jury assess the damages at the sum of 3673 dollars 67 cents.
“ If the Court shall be of opinion that the plaintiff is entitled to recover the said consideration money, and the amount paid for the assignment of the said mortgage deed, with interest on these sums from the dates, with the expenses aforesaid, and nothing more, then the jury assess the damages, at the sum of 8933 dollars 68 cents.
“ If the Court shall be of opinion that the plaintiff is entitled to recover the said consideration money, and the amount paid for the said assignment of the said mortgage deed, with interest on those sums from the time of the eviction aforesaid, and nothing more, then the jury assess the damages at the sum of 3840 dollars 19 cents.
“ If the Court shall be of opinion that the plaintiff is entitled to recover the value of the said premises, at the time of the eviction aforesaid of the said Elizabeth therefrom, together with the expenses by her sustained as aforesaid, and the interest thereof from the time of said eviction, then the jury assess the damages at the sum of 39011 dollars.
*186 “ And if the Court shall be opinion that the plaintiff is entitled to recover the said consideration money, together with the amount paid for said assignment, and the amount paid to Sarah Dudley, widow of said William Dudley, as the consideration for her release of her right of dower to said Increase and Elizabeth, with interest on these sums from the date aforesaid, with the expenses aforesaid, and nothing more, then the jury assess the damages at the sum of 9456 dollars 45 cents.”
* At the hearing before the jury, the plaintiff offered evidence to prove to the jury, that the defendants, at the time of making the sale of the lands mentioned in the declaration, and of executing the deed to Increase Sumner, and Elizabeth Sumner, knew that William Dudley was not seised of an estate in fee simple in said lands at the time of executing the mortgage deed ■ mentioned in the declaration, nor at the time of his death; and yet that they affirmed to the said Increase and Elizabeth, that he was at those times seised of such estate therein, and said Increase and Elizabeth believed the same. And that if the defendants did not know that the said Dudley was not seised of such estate in said lands at the time aforesaid, it was owing to their gross negligence, and failure to perform their duty as administrators of his estate.
This evidence was rejected by the judge, and the action was continued nisi for the consideration of the plaintiff’s motion for its admission, and for judgment on the verdict.
At the following March term in Suffolk, the opinion of the Court was given upon the verdict by
Sedgwick, J.
If in this case we, or any of us, entertained any doubt, we should delay a determination ; but as that is not the case, it has become our duty to pronounce judgment.
As to the motion for a new inquiry, we are all clearly of opinion, that the evidence offered and rejected was inadmissible. That evidence went directly to prove fraud in the defendants at the time of the contract, or such gross negligence on their part as would imply it. If this was true, an action on the case coyld be supported for that cause ; whereas this is an action of covenant on a deed, nor does the record, in any part of it, allege or suggest any fact of the nature offered to be proved. In our opinion, it would have been utterly wrong, as a surprise on the defendants, to have permitted the evidence offered to have been given ; (b) and, if possible, the *187 more manifestly so, as there was formerly a count in the declaration to this * effect, that is, charging the defendants with this fraud, which count was afterwards withdrawn. The defendants could not therefore have formed a con ception that such evidence would be offered at the trial; nor can it be supposed they could have come prepared to contest it.
The remaining question before us relates to the measure ot damages.
The action was brought upon the covenant of warranty, considered as a personal covenant, tantamount to a covenant for a quiet enjoyment. It appears that the deed contains other covenants, which regard the soundness of the title, and the right of the defendants to convey. The Court was of opinion that the deed, as a conveyance, was inoperative; and consequently that the cove nants relative to the title were broken at the time of the execu tian of the deed.
On this state of facts it is contended on behalf of the plaintiff, that the measure of damages is the value of the land at the time of the eviction, together with the expenses of defending against Dudley’s suit; and on the part of the defendants, it is contended that the true measure of damages is the purchase money; that is, the sum expressed as the consideration in the deed, and the interest from the time; or at most that amount, together with the expenses of defending the lawsuit. And we are all satisfied that the defendants are right.-
In the first place, the rule contended for by the defendants seems to be equitable, inasmuch as it will restore the full amount of what has been lost by a failure of the title. Again, covenants having been broken at the time of the execution of the deed, a cause of action immediately accrued. The real injury was then sustained, and the amount of indemnity for it precisely the money, which had been paid for a defective title. In such a case as this, if the grantee cannot enter into possession, he is entitled to demand imme diately the money which he has paid; and if he receives it, it must be deemed a satisfaction for the injury. * If there is delay, there must be interest on the amount of the purchase money, commensurate with the delay ; and that interest the law deems a satisfaction for the delay. If the grantee enters into possession, the profits of the improvement are deemed equivalent to the interest; but as he may be compelled to account for those profits, and pay them over to the owner, he is for that reason entitled to demand the interest, with the purchase money, in an action upon his covenant. Moreover, if the action had been commenced on the covenants which respect the title, there is no doubt *188 that the measure of damages would have been the purchase money with the interest. On those covenants an action might have been supported; and when the injury, the damages, and the contract are the same, can it consist with reason or justice, that the law should give to the plaintiff an option of varying his damages, as is the case here, more than tenfold, by commencing his action upon one covenant, from what they would have been, if commenced on another?
We are all of opinion that the plaintiff is entitled to recover the expenses, which have been incurred in defending against Dudley’s suit; because we think those expenses are inseparably connected with the plaintiff’s claim of indemnity ; and it would be too much to demand of the grantees in such a case, that they should be holden to decide, at their peril, on the validity of a title, set up in opposition to that which the grantors undertook to convey. As an instance in point, to support the justness of this observation, we all remember that it was found no easy task to decide the controversy, which was the foundation of this action.
But we none of us think that the claim for the money paid for the assignment of the mortgage is well founded. Although the assign ment of the mortgage, and the deed for the equity of redemption, were contemporaneous, yet they were perfectly distinct and independent of each other; and to the assignment one of the defendants was a perfect * stranger. And each contract was such as the parties were satisfied with, and on each received that security, with which they were contented ‘If that security has proved, or shall prove, insufficient, it is a misfortune, not to be compensated by an innocent man, who had no connection with the transaction, by which the loss may have happened. — After what I have said, it cannot be necessary to add that in our opinion the plaintiff cannot recover for the money paid for the release of the widow’s dower, (c)

 Co. Lit. 6, 7. — 2 Co. 55. —11 Co. 51. — Plowd. 196. — Shep. Touch. 75

 Co. Lit. 6, a. — 9 Co. 47, 6. — Com. Dig. Fait. E. 9.

 Lit. § 620.— Co. Lit. 325, and note 381, to Co. Lit. 326, b.

 [Comstock vs. Smith, 13 Pick. 116.-Allen vs. Seyward, 5 Greenl. 227. — Jackson vs. Winslow, 9 Cow. 13. — Ed.]

 1 Powell on Contracts, 371.

 Stat. 1783, c. 32.

 Sir T. Raym. 464.

 1 H. Black. 36.

 1 D. & E. 172.

 1 D. & E. 674.

 1 Cranch, 345.

 1 Mass. Rep. 208.

 L. Raym. 1418. Strange, 705, S. C.

 Mo. 70, pl. 191. —9 Co. 77.

 7 D. & E. 350, in notis.

 5 D. & E. 6

 5 East's Rep. 148.

 4 Mass. Rep. 595

 5 Mass. Rep. 299.

 1 D & E. 691.

 1 D. & E. 487, King & Al vs. Thom.

 1 D. & E. 691.

 5 D. & E. 6, Pearson vs. Henry.

 1 Vent. 49.

 4 D. & E. 347, Jennings vs. Newman.

 Powell on Contracts, 340, 346 — 1 Stra. 553. — 1 Rol. Abr. 22. — Hob. 4, 5 Cro. Jac. 342.

 2 Wils. 730.

 Powell on Contracts, 377.

 See 2 Bos. & Pul. 13.

 2 Rol. 250, l. 5.

 4 Com. Dig. Garranty, A. & G. — Co. Lit. 389, a. 379, b.

 2 Bos. §■ Pul. 13.

 [Vide Jeffrey vs. Bigelow, 13 Wend. 518. — Dimmick vs. Lockwood, 10 Wend. 142. — Lord Sandos vs. Fletcher, 5 B. & Ald. 835. — Hopkins vs. Grazebrook, 6 B. & Cr. 31. — Walker vs. Moore, 10 B. & Cr. 421. — Bacon. Dam. D.— Fox vs. Macreth, 2 Cox, 322. - - Macreth vs. Fox, 4 Br. P. C. by Toml. 258 — Greenwood vs. Wilkinson 1 Cat P. 625. —Ed.]

'(c) [Gore vs. Brazier, 3 Mass. Rep. 523. — Bigelow vs. Jones, 3 Mass. Rep. 512. 4 Kent, 475, 3d edit. ■— Ed.]