HUSTON v. SEELEY *et al.*

1. Recording act: VARIANCE IN NAME. Certain real estate had been conveyed to a *feme covert* by the name of "Almira J. Stringham." Her name before marriage was Almira Jane Ashley. After her marriage she wrote her name in two ways, sometimes as Almira J.

27 183
90 541
27 183
112 219
27 183
122 627

Stringham, and sometimes as Jane A. or J. A. Stringham. She was commonly called Jane Stringham when her christian name was used. A conveyance was executed by her in the name of J. A. Stringham, but which was indexed as A. J. Stringham, and there was a caption to the instrument as recorded as from "Almira J. Stringham to," etc. *Held*, that the record was sufficient to impart constructive notice to a subsequent purchaser or incumbrancer.

2. Trust-deed: ERROR IN STATEMENT. A trust-deed authorized the trustee "to execute a deed to the purchaser, to pay off the amount herein secured, with interest and costs, and hold the *same* subject to my order." *Held*, that the erroneous use of the word " *same*," instead of the word " *remainder*," did not vitiate the deed, or render invalid a foreclosure and sale by the trustee.

3. —— FORECLOSURE. Where, upon the filing of a bill therefor, an injunction was granted restraining the trustee in a deed of trust, from proceeding to sell the trust property, which, upon the final hearing, the court dissolved, and ordered that the trustee make the amount found due by the court under the power of sale contained in the instrument, instead of ordering the amount to be collected by sale on special execution, it was *held*, that this was regular, and that a subsequent foreclosure and sale by the trustee, in accordance with the terms of the deed of trust, was authorized and valid, the same as if no injunction proceeding had been had.

4. Redemption: DOWER INTEREST. A dower interest in real estate will not entitle the holder thereof to redeem the land from a judicial sale under a deed of trust or mortgage, in which such person claiming the dower did not join.

5. —— The right of redemption is founded upon an interest in the estate mortgaged which will be prejudiced or affected if the right to redeem is denied.

6. Dower: FORECLOSURE SALE OF: RIGHTS OF PURCHASER. Equity will recognize and enforce a sale and conveyance of the dower interest before the dower has been assigned or admeasured, and will accordingly recognize and enforce the rights which a purchaser of the dower interest of the husband or wife, as the case may be, acquires at a foreclosure sale under a mortgage in which both joined.

7. —— APPLICATION OF PRINCIPLES. A wife, in whom the title to certain real estate was vested, executed a deed of trust thereon, her husband not joining therein. Subsequently she, her husband joining in the execution thereof, executed a mortgage on the land to another party. Following this, the wife died, and after her decease the deed of trust was foreclosed and the property sold thereunder.

Sometime after this, and before his dower had been assigned, the mortgage, in which the husband and wife had joined, was foreclosed, and the property sold under the foreclosure decree. *Held,*

1. That the husband, not having joined in the execution of the deed of trust, the foreclosure and sale thereunder did not bar his right of dower.

2. That the dower interest of the husband became vested in the purchaser at the foreclosure sale under the morgage in which the husband and wife joined.

8. —— NATURE OF DOWER RIGHT. The general nature and extent of the dower right fully considered and cases cited by DILLON, Ch. J.

9. —— RIGHT UNDER LAWS OF 1853. The law of 1853 (Rev. § 2477) gave dower as at common law. The fact that the husband or wife died intestate, and without issue, would not, under section 1410 of the Code of 1851, respecting the descent of property, enlarge the right of dower, as such, in the survivor. Said last-named section contemplated the disposition of property which had not been disposed of by the intestate in his life-time, or which was not necessary to pay debts.

10. —— DAMAGES FOR DETENTION. The right to damages for the detention of dower accrues only from the time of a demand for dower. An action will therefore not lie where the dower has not been assigned, though the party may be entitled thereto.

11. —— PLEADING. Although the petition in an action sets out facts which entitle the plaintiff to be regarded as the assignee of the dower interest, and although it asks in substance that his rights in this respect be declared and established, yet, if it does not specifically seek to have the dower assigned, the court will not enter an order to that effect.

## *Appeal from Polk District Court.*

RECORDING ACT: CONSTRUCTIVE NOTICE: REDEMPTION FROM SALE UNDER DEED OF TRUST: DOWER INTEREST AS THE BASIS OF RIGHT TO REDEEM: NATURE OF DOWER INTEREST AND ITS ASSIGNABILITY: DAMAGES FOR DETENTION OF DOWER, ETC. — The adversary parties to the present controversy are the plaintiff (Huston) and the defendant (Callanan), who claims under the defendant Seeley.

The property in dispute is a portion of a lot, with a block of buildings thereon, known as the "Stringham

Block," situate in the city of Des Moines.    Both the par-
ties claim under one Almira J. Stringham, now deceased,
but who was the wife of Thomas H. Stringham, yet in
life.    The plaintiff claims under a mortgage decree and
sale thereunder, and the defendant by virtue of a sale
made under a deed of trust.    The title to the property
was in Mrs. Stringham.

I. The liens on the property are as follows:

1. A mortgage executed by Mrs. Stringham to B. F.
Allen, to secure a promissory note for $1,367, dated De-
cember 15, 1855, and assigned to plaintiff September 24,
1857.    A suit to foreclose this is now pending in the
District Court; and it was a suit on this mortgage that
this court had before it in the case of *Huston* v. *String-
ham*, reported in 21 Iowa, 36.    The mortgage is duly
recorded and is the first lien.

2. A deed of trust executed by Mrs. Stringham, by the
name of "J. A. Stringham," to T. E. Brown, trustee, to
secure a debt to A. J. Stevens of $800.    The deed of
trust is dated April 18, 1856, and was duly recorded.
The husband, Thomas H. Stringham, did not unite in or
execute this deed of trust.    If the alleged variance in
the Christian name of Mrs. Stringham does not prevent
the recording of this instrument from operating as con-
structive notice, it was the second lien or charge on the
property.    It is under this deed of trust that the defend-
ant Callanan claims title.    The facts connected with the
trustee's sale will presently be stated.

3. A mortgage executed by Mrs. Stringham and her
husband, dated May 28, 1856, to McGaughey, Muma &
Co., to secure a note for $1,400.    This is the third incum-
brance.    The husband united in the granting part of this
mortgage.    It is under a foreclosure sale under this mort-
gage that the plaintiff claims in the present suit.    The
nature of his claims will be hereafter stated.

II. Early in January, 1857, Mrs. Stringham died without children, leaving her husband surviving. By a will, which has been duly admitted to probate, she gave him all of her property, real and personal, and made him the executor of her estate. At the time of her death, neither of the mortgages or the deed of trust had been foreclosed; and the title to the property was in Mrs. Stringham, subject to these incumbrances.

III. After Mrs. Stringham's death, the deed of trust was the first instrument sought to be foreclosed. The facts connected therewith are as follows: This instrument, it will be remembered, was signed by *Mrs. Stringham alone.* In October, 1857, Brown, the trustee, at the instance of Callanan, the then holder of the notes secured by the deed of trust, advertised the property for sale pursuant to the power therein contained. Before the day fixed for the sale, Stringham, " as administrator of his deceased wife," filed a bill to enjoin the sale, and an injunction was granted. On appeal to the Supreme Court, at its December Term, 1858, the order of the District Court allowing the injunction was reversed, partly because the plaintiff did not show by his petition that he had any interest in the property. The case is reported in 7 Iowa, 38. When the cause was remanded, Stringham, in March, 1859, filed an amended petition as " the sole heir at law and devisee of his wife," making Brown, trustee, and Callanan, beneficiary, defendants, alleging that the debt mentioned in the trust-deed had been paid, etc., and praying that the notes be surrendered, and the sale under the deed of trust be enjoined.

In March, 1860, this cause was disposed of by a decree in the District Court, in substance, that it found that there was justly due Callanan, on the deed of trust, $734; it ordered that the application for an injunction against the sale be denied; that the plaintiff take nothing by his

petition; that the deed of trust be declared a lien on the premises for the said $734, and that the said premises "be sold by the said trustee in the deed of trust named, to pay and satisfy the amount now due thereon, as herein decreed, pursuant to the original intent and design of the parties to the said deed of trust." To this decree there were no parties except Stringham and Brown and Callanan.

After the decree, Brown, as trustee, re-advertised the premises for sale under the deed of trust, and on the 24th day of October, 1860, sold the same to Seeley (one of the present defendants) for the amount due (viz., $781.88) on the deed of trust, and on the same day executed to him a deed therefor.

Callanan claims under Seeley; and defendants admit that they took possession immediately after their purchase and have retained it ever since.

This is the defendant's title.

IV. The plaintiff in the present suit bases his rights upon the third lien above mentioned, viz.: the mortgage made by both Stringham and wife to McGaughey, Muma & Co., dated May 28th, 1856. This mortgage, soon after its execution, was assigned to the plaintiff, who had, indeed, been the real owner thereof from the first, as it was a loan of his money which formed the consideration of the same.

In 1861 plaintiff filed his petition to foreclose this mortgage, making Stringham a defendant, but not the trustee (Brown), or Seeley or Callanan parties, although, at this time, the sale and deed had been made under the deed of trust and defendants were in possession.

In 1862 plaintiff obtained a decree of foreclosure for the full amount of the note, not allowing any credits, viz.: for the sum of $1,820 and costs, and an order for the sale of the mortgaged premises.

In January, 1866, a sale was had under this decree, and the plaintiff purchased the property, subject to other liens, for $1,000, and received a sheriff's deed therefor.

In 1866 the plaintiff commenced the present suit against Seeley and Callanan, and by his petition, and various amended petitions, he claims:

1. That the mortgage to McGaughey, Muma & Co., though subsequent in date, is prior in law to the deed of trust which is the foundation of the defendant's title. This claim is based upon an alleged variance in the Christian name of Mrs. Stringham. The further facts in this respect appear in the opinion of the court. If the court shall be against the plaintiff on this point, he claims:

2. A right to redeem from the sale under the deed of trust. This right to redeem is based upon the allegation that the deed of trust was not foreclosed in a legal manner. The alleged defects in this respect are stated in the opinion of the court.

The right to redeem from the sale under the deed of trust is also claimed in respect of the dower-right of Thos. H. Stringham, the husband, who signed the mortgage under which the plaintiff claims, but who did not sign the deed of trust under which the defendants claim.

And the plaintiff, if he shall be found not entitled to redeem, then claims:

3. That he is entitled to, and is the owner of, the dower interest of Thos. H. Stringham; which, as his wife died without issue, the plaintiff insists is one-half in fee, or, at all events, one-third for life, and he asks that his right thereto be declared and established.

Each of these claims is resisted by the defendants.

The parties took testimony, and the cause was submitted to the District Court, which found the equities of the case to be with the defendants, and thereupon dismissed

the plaintiff's petition, and, so far as this action is concerned, declared the title to be in the defendants.

From this decree the plaintiff appeals.

The cause was argued on appeal orally and in writing.

*Polk, Hubbell & Barcroft,* and *Phillips, Gatch & Phillips,* for the plaintiff.

*J. Callanan* for the defendants.

DILLON, Ch. J. — I. As to the notice imparted by the registration of the trust-deed.

One object of the present suit is to have the mortgage 1. RECORDING executed by Mrs. Stringham and husband, ACT: variance in name. May 28th, 1856, to McGaughey, Muma & Co., and soon afterward assigned to the plaintiff, declared to be a prior lien to the deed of trust which was executed April 18th, 1856, and recorded on the 21st day of the same month. No actual notice to the plaintiff of the deed of trust is shown. Was it constructive notice to him? This he denies. And the ground of this denial is, that the record of the deed of trust did not impart constructive notice of its existence. The facts are these:

The property was owned by Mrs. Stringham. It had been conveyed to her by the name of "Almira J. Stringham." Her name before her marriage was Almira Jane Ashley. It was in evidence that after her marriage she wrote her name in two ways, viz.: Almira J. Stringham and Jane A. or J. A. Stringham. She was commonly called *Jane* Stringham when her Christian name was used.

In executing the deed of trust she signed her name " J. A. Stringham." Though it is stated in the instrument that " Thomas H. Stringham relinquishes all of his

interest," etc., he does not join in the same. In the index to the record of this mortgage her name appears as A. J. Stringham. In the record there is a caption to the instrument thus: "Almira J. Stringham to Andrew J. Stevens. Deed of Trust." Whether this was placed there by the recorder, or copied from the original deed of trust, does not very clearly appear, the original deed of trust not being in evidence.

Under these circumstances it is our opinion that the record was sufficient to impart constructive notice. The index, as to her name, was as appellant claims it should be. She wrote her name both ways. A searcher of this title in tracing it would find that the property had been conveyed to Almira J. Stringham.

The index could inform him that A. J. Stringham had executed a deed of trust upon the property, the title to which he was examining. Turning to the record he would find a deed of trust for the same property, with a caption of the same name as that stated in the index, and a reference in the instrument to Thos. H. Stringham (the husband), though the instrument purported to be signed J. A. Stringham.

Here was enough, as we think, to lead a prudent examiner to a knowledge of the deed of trust, and to affect a subsequent incumbrancer with constructive notice.

II. As to the right of the plaintiff to redeem from the sale under the deed of trust.

The plaintiff claims the right to redeem from the sale under the deed of trust upon two distinct grounds.

2. TRUST DEED: 1. Because the deed of trust was not prop-
error in state-
ment. erly foreclosed.

(a) The trust-deed, after authorizing the trustee to sell, and prescribing the notice, etc., empowers him " to execute a deed therefor to the purchaser, to pay off the

amount herein secured, with interest and costs, and to hold the same subject to my order."

This, probably, refers to the balance of the money and not to the deed; but, as the grantor in the deed of trust was dead, the trustee could not well hold the deed subject to her order, and yet obtain the means from the sale with which to pay the debt. It is our opinion that he was authorized in making the sale to execute and deliver to the purchaser a deed upon receiving from him the purchase-money. The main and leading purpose of the instrument was to give to the creditor the right to make his money by a sale of the property by the trustee, and it should be construed accordingly. This purpose would be frustrated if the word "same" was construed as the plaintiff's counsel suggests it should be.

The deed of trust is copied from the form given by the Code of 1851 (p. 195), and the word "same" is used in stead of the word "remainder" — doubtless a mere clerical inadvertence.

(b) It will be remembered that, when the trustee advertised the property for sale, Stringham, first as the administrator and subsequently as the heir and devisee of his wife, filed a bill against Brown, the trustee, and Callanan, the *cestui que trust,* to enjoin the sale, alleging that the debt had been paid, etc. On the final hearing the District Court found the amount due Callanan, denied the injunction, ordered that the plaintiff therein take nothing by his petition, and that the trustee make the amount by a sale under the powers contained in the trust-deed instead of ordering the amount to be collected by sale on special execution. This the present plaintiff insists the court had no right to do, and that the sale by the trustee under such circumstances is void.

The decree of the court was proper. It might have rendered a decree and ordered a special execution to en-

Huston v. Seeley et al.

force it; but as the instrument was a deed of trust which the creditor had a right to foreclose out of court (Code, 1851, § 2096), and as the court had found that the debt was just and due, and that there was no ground for an injunction, it was competent for it to dismiss the suit, which would leave the creditor at liberty to proceed under the deed of trust, the same as if no suit had been brought. And such, in substance, was the decree of the court. The sale made by the trustee derives its efficacy from the trust-deed and not from the decree. Its effect is the same as if no proceeding in court had been commenced, the same as if no decree had been rendered. The decree does not undertake to affect or bar the rights of Thos. H. Stringham as to dower, and his rights in that respect are just the same as if he had never instituted the suit in which the decree was rendered.

We repeat that the sale under the deed of trust has precisely the same effect as if this suit had not been commenced. The sale was by virtue of the power contained in the trust instrument. Since Thos. H., the husband, did not join with his wife in the execution thereof, his rights *as husband* would not be affected by a sale thereunder. But so far as he claimed *under his deceased wife, as heir or devisee*, his rights would be cut off by a valid sale made in accordance with the terms of the trust-deed. Code, 1851, § 2096.

2. It is claimed that the plaintiff has the right to redeem from the sale under the trust-deed, because he is 4. REDEMP- the owner of the dower-right of Thos. H. TION: dower interest. Stringham, the husband, who did not join in the execution of the deed of trust.

This claim obviously rests upon the assumption that the husband, in virtue of his dower-interest, and in virtue of that alone, would have a right to redeem from a valid sale made under the deed of trust. If *he* could not thus

have redeemed, of course the plaintiff, as the alleged assignee of his dower-interest, cannot do so.

The right of redemption is founded upon an interest in the estate mortgaged, which will be prejudiced or affected if the right to redeem is denied. If the husband had signed the trust-deed, it is clear that he might redeem in virtue of his dower-right at any time before a sale, or even after a sale, if the power has not been legally executed by the trustee. Why? Because he has an interest which will be, or may be, destroyed, if no redemption is made. See Scrib. on Dower, chapter 23, pages 459–461, 473–475, *et seq.*, where many of the authorities are collected.

But here, the husband did not sign the trust-deed, and his rights, *as husband*, could not be and were not affected by a sale thereunder.

These rights were paramount to the trust instrument, were not embraced in it, nor put in peril by it, nor affected by a sale under it. His right to dower remained the same as if no trust-deed had ever been executed. After a sale thereunder he could not redeem from it in virtue of his dower interest, for the plain reason that this interest existed just as fully against the purchaser at the sale as if no sale had ever been made.

Where there has been a valid judicial sale of property as against the husband, although the dower of the wife might not be affected thereby, we have never heard it claimed that by reason of having a dower-right she might redeem from such sale, though it were in every respect regular against the husband. Such a decision would unsettle hundreds of titles and could rest upon no principle of logic or policy.

Without further discussion, we conclude our observations on this point by remarking that the effect of the non-joinder of the husband in the execution of the deed

of trust would be to preserve his dower interest; but not
to give him by reason thereof a right to redeem from a
regular sale made in accordance with the terms of the
contract (the deed of trust) between the owner of the fee
and her creditor.

III. RIGHTS OF THE PLAINTIFF AS RESPECTS THE DOWER
INTEREST OF THOMAS H. STRINGHAM. — It will be borne in
mind that the trust-deed was executed in 1856,
and that the wife died in 1857. Hence the
act of 1858 (Rev. § 2255) has no application
to the present case.

6. DOWER:
foreclosure
sale of: right
of purchaser.

It should be remarked that under our statute the hus-
band has the same right of dower in the real estate of
the wife that she has in his real estate.

We have before seen that the husband's right of dower
was not affected by the trust-deed or sale thereunder, for
the reason that he did not join in the execution of the
instrument. At the time of the sale under the deed of
trust his right of dower in the property was consummate,
as his wife had before that time deceased.

He could have applied to have his dower assigned, and
the defendants, as the alienees of the wife, could not
successfully have defended against it. He did not sign
the instrument under which they deduce title; and *they*
could not say that he had joined with his wife in the ex-
ecution of a mortgage to the plaintiff subsequent to the
date of the deed of trust. Besides, the mere execution
of such a mortgage prior to a foreclosure and sale there-
under would not bar the right to dower, for, as respects
all persons, unless it be the mortgagee, the mortgagor is
regarded as the owner.

If the plaintiff's mortgage had not been foreclosed
and a sale had thereunder, no proposition can be plainer
than that Thomas H. Stringham would be entitled to
dower in the property, and could have it assigned or

Huston v. Seeley et al.

admeasured to him as against the defendants claiming under the trust-deed.

It will be remembered that, after the execution of the trust-deed by the wife alone, she being the owner of the property, *she and her husband* united in the execution of a mortgage to the plaintiff; that after the death of the wife this mortgage was foreclosed, and the property sold, under the decree, to the plaintiff, who has obtained therefor a sheriff's deed. The defendants were not parties to the foreclosure proceeding, and the sale thereunder was not made until 1866. (See statement, division IV.) And the question here presented is, what rights, if any, did the plaintiff acquire by virtue of the mortgage and the foreclosure decree and sale under it.

The defendants insist that the plaintiff acquired nothing thereby, because all rights conferred by the mortgage (which was subsequent to the deed of trust) were barred or extinguished by the previous sale under the powers contained in the instrument last named. And it is clear that the sale under the deed of trust did operate to cut off all subsequent rights so far as the wife had the power to authorize this to be done. But, as we have already seen, this did not affect the right of the husband to dower; and this right remained in the husband not only after the execution of the trust-deed, but after the sale under it.

So far as the husband claims as heir or devisee he claims *under his wife*, and as she was cut off by the sale under the deed of trust, he is likewise cut off. This leaves nothing in him but the dower right. Of this, the plaintiff claims to be the assignee by reason of his mortgage foreclosure and purchase. This the defendants controvert; and to this question we briefly turn our attention.

This makes it necessary to consider the nature of the dower right or interest. Although in this instance it is *8. —— nature* the husband's dower right that is in dispute, *of dower right.* yet the question is the same as if the dower right of the wife were in issue, since the husband and wife are in this respect placed by the statute upon precisely the same footing.

It has been correctly remarked by Mr. Scribner in his very recent and able work (2 Scrib. on Dower, ch. 1, p. 5 *et seq.*), that courts have found it not a little difficult to define the nature of the dower interest as a right of property. It is, indeed, in many respects, anomalous, neither furnishing nor borrowing reliable analogies from other branches or institutions in the law. (Park. Dow. 152.) Because, before the death of the husband (or under our statute of the husband or wife), the right is both inchoate and contingent — neither perfect or vested, and because it is impossible to tell whether it would ever become mature or fixed, some judges have used expressions denying it to be an interest in lands.

And yet that it is an interest in or pertaining to lands, and that it is of a valuable character, cannot be denied. Because it is so, it cannot be released or conveyed, except in writing. *White* v. *White*, 1 Harr. (N. J.) 202 ; *Keeler* v. *Tatnell*, 3 Zabr. (N. J.) 62. Because it is so, the existence of an inchoate right of dower has been regarded as a breach of the covenant against incumbrances. *Carter* v. *Denman*, 3 Zabr. 260 ; *Porter* v. *Noyes*, 2 Greenl. 22 ; *Jones* v. *Gardner*, 10 Johns. 266.

Although it is not an estate in lands, or before the death a vested interest in them, we think the author above named is entirely right in regarding it as " a substantial right, possessing, in contemplation of law, the attributes of property, and to be estimated and valued as such. 2 Scrib. Dow. 8. In this State the interest of a doweress

has always been considered as an interest in land, and recoverable as such in a real action. *Rice* v. *Nelson*, *ante*, 148.

The dower interest has a law unto itself.

During the life of the husband and wife, the latter can make no beneficial use of the right for herself. She cannot disannex or separate it from the land, and sell and convey it as a distinct interest.

At common law she could not release it to her husband or to a trustee for his benefit, nor relinquish her right thereto in any other way than by joining with her husband in a sale and conveyance of the land to a third person. See *Simms* v. *Hervey*, 19 Iowa, 272, and the authorities on this subject collected by Mr. Scribner, 2 Dow. p. 299, pl. 43 — particularly, *Carson* v. *Murray*, 3 Paige, 483; *Rowe* v. *Hamilton*, 3 Greenl. 63; *Martin* v. *Martin*, 22 Ala. 86; *Townsend* v. *Townsend*, 2 Sandf. 711; *McKee* v. *Reynolds*, 26 Iowa, 578.

Her right, while it is inchoate, cannot be levied on or otherwise seized for her debts. Nor can it, after it has become consummate by the death of the husband, and prior to its assignment, be levied on or seized for her debts at law, unless by the aid of statute provisions; but yet it has been thus reached in equity and subjected to the payment of her debts. See cases cited, 2 Scrib. 45.

At law the unassigned right of dower could not be the subject of a valid grant to a stranger though it might even, before assignment be released to the heir. But in equity the right of a widow to sell and convey her dower interest, before assignment, has frequently been recognized, and the assignee may prosecute a suit for dower in her name (2 Scrib. Dow. 40, 41, 43, and cases cited, especially *Potter* v. *Everitt*, 7 Ired. Eq. 52; *Robie* v. *Flanders*, 23 N. H. 524; *Thompson* v. *Simpson*, 3 Barr. 60, 71; *Rowe* v. *Johnson*, 19 Me. 146; *Wilson* v.

*McLenaghan* and *Lamar* v. *Scott*, cited below); if not, indeed, under the Code, in his own name, as the real party in interest. See on this point *Strong* v. *Clem*, 12 Ind. 37; *Wilson* v. *McLenaghan*, 1 McMul. Eq. (S. C.) 35; *Lamar* v. *Scott*, 4 Rich. (S. C.) 515.

In the case now under consideration, the husband, in joining with his wife, conveyed or relinquished his dower interest to the mortgagee.

Chancellor WALWORTH, in speaking of a similar conveyance, uses this language, which we quote as applicable to the case in hand: "Mrs. Arnold joined with her husband in the mortgage; and, of course, her dower interest in the premises is pledged for the payment of his debt, so far as the same can be reached and applied for that purpose under a decree of foreclosure made in conformity to the statute." *Bank, etc.*, v. *Arnold*, 5 Paige, 38.

The dower interest of Mr. Stringham, then, was pledged to the mortgagee by the mortgage under which the plaintiff claims. If the wife had continued to live until now, the husband's dower interest would have been of no present value to the plaintiff. So if the wife had survived the husband. But it so happened that she died before her husband, and before either the deed of trust or mortgage was foreclosed.

The husband's right of dower thereupon became consummate. He had a right to have it assigned; and this right continued, as we have shown, after the sale under the deed of trust, and it continued, as we think, until the sale to the plaintiff under her foreclosure decree upon the mortgage executed by both the husband and wife.

By this sale the dower interest of the husband became vested in the plaintiff.

The authorities above referred to show that equity will recognize and enforce a sale and conveyance of the dower interest before the dower has been assigned or ad-

measured, and, if so, equity ought to recognize the rights acquired by the plaintiff by his purchase under the foreclosure decree.

By that purchase he became the assignee or owner of the husband's dower interest. After such sale the husband could no longer demand to have his dower assigned for his own benefit. By his purchase the plaintiff acquired all the rights as to dower which the husband had before possessed. This view, which seems sound in principle and is supported by authority, also works justice. Defendants purchased subject to the dower incumbrance. Why should they relieve their estate from it without paying for it? Plaintiff bought and paid for the dower interest. Why should he not have it, especially as against the defendants who have never acquired it or paid for it?

It may be proper to add that the case might present a different question if the conveyance by the wife alone had been absolute, instead of a deed of trust or mortgage, or if the deed of trust had been foreclosed and her title divested in her life-time, though subsequent to the execution of the mortgage to McGaughey, Muma & Co.

IV. NATURE AND EXTENT OF THE DOWER INTEREST OF THE HUSBAND.—Having thus arrived at the conclusion that the plaintiff, by his purchase at the foreclosure sale, is the beneficial and real owner of the dower interest of Mr. Stringham, the next question which arises is as to the extent of that interest. Mrs. Stringham died without issue, and devised all of her real and personal property to her husband. Her death occurred in January, 1857. At the time the deed of trust and mortgage were made, as well as at the time of her death, the law of 1853 as to dower (Rev. § 2477) was in force. This gave dower the same as at common law, which would be one-third *for life.* At the time of the death of Mrs. Stringham, section 1410 of the Code of

1851, as to the descent of property, was in force, which provided in effect that if Mrs. Stringham had died *intestate*, there being no issue, her husband would be entitled to one-half of her estate in fee, this half to include his dower.

Under this section of the statute the plaintiff claims that Mr. Stringham would be entitled to one-half of the property in fee, and that, as the assignee of the husband, the plaintiff is entitled to the same interest. There are several answers to this position.

1. Mrs. S. did not die intestate.

2. The statute (§ 1410 of Code) contemplated the disposition of property which had not been disposed of by the intestate in his life-time, or which was not necessary to pay debts.

3. All of the interest of Mrs. S., and all interest of her heirs and devisees, was extinguished by the sale under the deed of trust.

The only interest which this sale did not cut off was the dower interest of the husband, which was simply one-third for life, as at common law.

V. DAMAGES FOR DETENTION OF DOWER. — The defendants have been in possession of the property, receiving the rents and profits, since their purchase at the trustee's sale in October, 1860. The plaintiff asks, if he shall be found to be the assignee of the dower interest, that he shall be allowed for one-half or one-third (as the court shall decide) of the rents or income of the property which have been received by the defendants.

There are several reasons why this claim cannot be granted.

In the first place, while we decide that the plaintiff is the assignee of the husband's dower interest, yet the dower has never been assigned, and there is no prayer

that it shall be. When it is assigned, the plaintiff may or may not be entitled to damages for its detention. In this case the lands are held by the defendants, the alienees of the wife; and the plaintiff did not perfect his right to the dower interest until his purchase at the decree sale in January, 1866. It may admit of question whether his right to damages in respect of rents and profits could in any event go beyond the date of his purchase. But if it could, the case of *O'Ferrall* v. *Simplot* (4 Iowa, 381) settles that the right to damages as against the defendant arises only from the time of a demand for dower, provided the demand was not more than six years before the commencement of the suit. In the case just cited, this subject was very carefully examined, and the decision is unquestionably correct.

The petition as amended, although it sets out facts which *prima facie* entitle the plaintiff to be regarded as the assignee of the dower interest, and although it asks in substance that the plaintiff's rights in this respect be declared and established, does not specifically seek to have the dower assigned. The defendants, in their answer and cross-petition, set up the proceedings under the deed of trust, and ask that their title be quieted. The court entered a decree for the defendants. If this decree should remain unmodified it might and probably would bar the plaintiff from asserting his rights as the assignee of the dower interest. In this respect the plaintiff is entitled to have it modified.

11. — pleading.

The decree below will be so modified as not to bar or preclude the plaintiff from instituting such suit or proceedings as he may see proper, to have the dower interest of Thos. H. Stringham set off or admeasured. Nor is the defendant to be precluded or barred from meeting such claim by any defense he may have thereto.

To facilitate the bringing of this litigation to an end

we have called attention to the rules of law in respect to damages for the detention of dower.

With this disposition of the case it is not deemed necessary to enter into an examination of the question as to the amount of rents collected or which might have been collected by the plaintiff, or as to their application. These questions are left open to be adjusted in the pending suit on the first mortgage, or otherwise.

The costs of this appeal will be equally divided.

Decree modified.