# APPENDIX.

## NOTES OF CASES NOT OTHERWISE REPORTED.

### LUCAS ET AL v. BENNETT ET AL.

ASSIGNMENT: BANKRUPTCY: DOWER: JUDICIAL SALE.

*Appeal from Muscatine District Court.*

TUESDAY, DECEMBER 14.

THE petition alleges that at a sale made on the 6th day of July, 1869, by John W. Green, assignee in bankruptcy of Joseph Bennett, plaintiff puchased and became the owner of the fourteen feet of lot three, in block number thirty-four, in the city of Muscatine, and out-lot number three, in the northwest quarter of section number thirty-six, in township number seventy-seven, north of range number two west, containing eight and seventy-five hundredths acres; that Joseph Bennett, being largely indebted to plaintiff and others, caused said property to be conveyed to his wife Elizabeth R. Bennett for the purpose of defrauding his creditors, and that the title of record to said property is in the defendant, Elizabeth R., who is in possession and claims to be the owner. The petition asks that the title be decreed to plaintiff, as against the defendants. By an amended petition plaintiff alleges that he holds the title to said property partly in trust for Lewis Coe and A. O. Warfield. The defendants deny all charges of fraud, allege that Elizabeth R. Bennett is the real and *bona fide* owner of the property in controversy, and set forth a detailed statement of the transactions, whereby the title became vested in said Elizabeth, in answers covering over thirteen pages of the printed abstract.

Pending the trial Elizabeth R. Bennett deceased, and the cause was continued against Joseph Bennett, her administrator.

The court dismissed the petition of plaintiffs, and they appeal.

*Cloud & Broomhall,* for appellant.

*Richman & Carskaddan,* for appellee.

703

DAY, J. — The pleadings and evidence are very voluminous, together occupying about one hundred pages of the printed record. It is impossible to give a very clear idea of them, within the limits which can with propriety be devoted to the consideration of a case involving almost solely questions of fact. We have given to the whole testimony a very careful and attentive perusal, and we content ourselves with a brief and, as far as practicable, chronological statement of the facts which we find to be either conclusively or by a fair preponderance of the testimony established.

In 1848 the defendant, Joseph Bennett, erected a steam mill in Muscatine, borrowing for that purpose $8,000 of John W. C. Schenck, of Franklin, Ohio, the husband of Mrs. Elizabeth R. Bennett's mother, and securing the same by a mortgage on the mill property, bearing interest at ten per cent, payable annually. In 1850 Schenck loaned Joseph Bennett a further sum of $2,000, which was secured by a mortgage on the same property. The same year the mill was burned. At that time the defendant, Joseph, in addition to what he owed Schenck was very largely indebted to his brother, Oliver Bennett. Acting under the advice of his counsel, in August, 1851, Joseph Bennett executed to his brother Oliver a deed of trust of the mill property and the property in controversy, as well as of all his other real estate, and his stock of merchandize, notes, accounts and other personal property, "for the payment of the indebtedness of Joseph to the said Oliver, amounting as is supposed to the sum of $30,000; after paying the said indebtedness of the said Oliver, then for the payment of all the other debts of the said Joseph Bennett ratably." By this means the defendant Joseph obtained further large advancements from his brother for the purpose of rebuilding the mill. Afterward the claims held by Oliver Bennett, which were largely in excess of the value of the property conveyed by the trust deed, were placed in the hands of Jacob Butler for collection. Butler, finding that Bennett had a judgment against the city of Muscatine for the sum of $10,594, which had been garnished by two of defendant's judgment creditors, procured a transfer of this judgment to Geo. C. Stone in trust for Oliver Bennett. Matters remained in this condition until February, 1859, when the defendant Joseph, at the solicitation of Butler, the attorney of Oliver, confessed a judgment in the Muscatine District Court for the full amount of Oliver's claim, being $46,320.68.

Appellants urge that the debts, on account of which this judgment was confessed, were not real, and that the confession of judgment was for the purpose of covering up defendant's property. We are satisfied, after a careful examination of all the testimony, that we are not warranted in finding the fact to be as claimed.

In December, 1863, Oliver Bennett, after trying in various ways to settle up his claims, proposed that if he were paid $5000 he would, for the benefit of Mrs. Bennett and the children, convey all his interest in the property to his brother's wife, subject to a mortgage for the payment of the annual premium on a policy for $10,000, which he had on his brother's life.

After trying to get other parties to advance the money and take the property on the terms proposed, Jacob Butler took it himself, it being agreed that he was to have $3,000 in addition to the amount paid Oliver. Pursuant to this arrangement the judgment was assigned to Butler in January, 1864.

Butler sold the judgment against the city of Muscatine and paid off all taxes and judgments prior to that of Oliver. He had the property in controversy in connection with other property sold at sheriff's sale, and he purchased the same at the sale for the sum of $9,900. When the time for redemption expired Butler obtained a sheriff's deed. and afterward, March 13, 1866, he conveyed the property by him bought at sheriff's sale, including the property in controversy to the defendant, Elizabeth R. Bennett.

On the 24th of February, 1868, M. M. Price, Register in Bankruptcy, duly assigned and conveyed to John W. Green "all the estate, real and personal, of the said Joseph Bennett, * * * including all the property, of whatever kind, of which he is possessed, or in which he was interested on the 15th day of January, 1868." On the 30th day of September, 1869, Joseph Bennett was duly adjudged a bankrupt and received a discharge from all debts and claims which by the brankrupt act are made provable against the estate, and which existed on the 15th of January, 1869, excepting such debts, if any, as are by the said act exempted from the operation of a discharge in bankruptcy. Afterward, on the 10th day of October, 1869, the assignee sold and conveyed the property in controversy to the plaintiff, Samuel Lucas, the granting clause in the deed being as follows: "I. John W. Green, assignee of Joseph Bennett, bankrupt, do hereby sell, convey and assign all the right, title and interest of the said bankrupt in and to the foregoing estate to the said Samuel Lucas, his heirs and assigns forever; it being the intention of the said assignee to convey no other or further estate than was conveyed to the said John W. Green. assignee, by the deed of assignment aforesaid."

Under this deed plaintiff claims the property and seeks to set aside the title of Elizabeth R. Bennett. The petition of plaintiff was properly dismissed. The judgment in favor of Oliver was a lien upon all this property, and the evidence shows that Joseph Bennett had not property adequate to its satisfaction. If Oliver had insisted upon the payment of his whole claim nothing would have been left for plaintiff. Clearly Oliver would have had the right to bid off this property at the sheriff's sale for $9,900, and, after the title became absolute in himself, by the sheriff's deed, to convey it to Elizabeth R. Bennett for $5,000, subject to a mortgage to secure the annual premium on the policy on the life of Joseph; and if he had done this, no one could have complained. His right to do as he pleased with his own property no one will dispute. But this is in effect just what was accomplished by the assignment to Butler, and the purchase at sheriff's sale by him, and subsequent conveyance to Elizabeth. The plaintiff has not been injured by this transaction, and hence ought not to be heard to complain of it.

Appellants, however, claim that the deed of the assignee at least conveys to plaintiff the dower interest of Joseph Bennett, and that, as this interest has now become vested and absolute by the death of Elizabeth R. Bennett, plaintiffs are entitled to a decree vesting in them the one-third part in value of the premises. This position, we think, cannot be admitted. At the time of the conveyance to the assignee, Elizabeth was alive. Joseph had merely an inchoate, uncertain, contingent estate in the realty of his wife. Whether it should ever vest depended upon the happening of a contingency. This contingency happened long after the purchase of plaintiff. The authorities

cited by appellants do not support the view that an inchoate right of dower passed by an assignment in bankruptcy, and we think that *Huston v. Seeley*, 27 Iowa, 183, in so far as it bears upon this question, is opposed to this view. The decree below is

                                                    AFFIRMED.