35  27
131  64

FOSTER *et al.* v. YOUNG *et al.*

1. Conveyance: DEED BY GUARDIAN AND EFFECT OF COVENANTS THEREIN. Where a mother, as guardian of her children, executes a conveyance, wherein she covenants " for herself, her heirs, executors and administrators, that she is seized of a good and indefeasible title in fee simple, and that she will warrant and defend the title " to the grantee, she cannot afterward be heard to claim or assert an interest which she held in her own individual right at the time of the execution of such conveyance. The doctrine respecting the effect of covenants in a conveyance of one contracting *in autre droit* and the authorities bearing thereon, discussed by DAY, J.

2. —— RIGHT OF REDEMPTION. The effect of her covenants in such case is the same as though she had disclaimed any personal interest in the property, and she cannot afterward claim any title to or interest therein, even for the purpose of redeeming the property from judicial sale.

3. Guardian's sale: REVERSIONARY INTEREST OF HEIRS. A guardian of heirs holding only a reversionary interest in real estate may, under authority of the probate court, mortgage or otherwise convey the same.

4. —— DEED OF TRUST. A guardian may, under the provisions of the statute (Rev., § 2552) and proper order of the probate court, execute a deed of trust as well as a mortgage upon real estate of the wards.

*Appeal from Scott District Court.*

TUESDAY, SEPTEMBER 17.

THE petition avers that Thomas Foster died intestate, seized of lot 4, and north 45 feet of lot 3, in C. S. Whisler's addition to Davenport; lots 6 and 7, block 2, of Forrest and Dillon's addition; lots 14 and 15 in block 16, and lots 1, 2, 3 and 4 in block 22, in Fulton's addition, and leaving Ellen Foster, one of the plaintiffs, his widow, and the other plaintiffs, six in number, his children.

The petitioners pray that certain sheriff's sales of lot 4, and the north 45 feet of lot 3, under the foreclosure of a deed of trust, and a judgment obtained by Whitaker, and also a sale of the same property by Nash, administrator *de bonis non*, be set aside; and that if all the proceedings cannot be set aside that an accounting be had, and they be permitted to redeem.

The cause was referred to James T. Lane, Esq., to settle the issues, take testimony and report the same, together with his finding of facts and conclusions of law applicable thereto. The referee's report is fully sustained by the testimony, and the admissions in the pleadings, and embrace the following facts, to wit:

On the 24th of June, 1857, Thomas Foster died intestate, leaving Ellen Foster, the plaintiff, as his widow, and the other plaintiffs, his children, minors, and his heirs at law. Said Thomas Foster died seized of the real estate described in two paragraphs of plaintiffs' petition, in fee simple, free from incumbrances. On the 29th of June, 1857, Ellen Foster, the widow, was duly appointed and qualified as administratrix of Thomas Foster's estate, and

on the 10th day of September, 1859, she was removed, and D. B. Nash duly appointed and qualified as administrator, *de bonis non*, of said Thomas Foster's estate. On the 30th day of July, 1857, said Ellen Foster was duly appointed and qualified as guardian of the persons and property of said minor children of Thomas Foster, deceased, and has continued to act ever since, and is still the guardian of such of those minors as are under age. At the time of his death, Thomas Foster occupied and used the double house situated on the north 45 feet of lot 3 of said property, as his home, and the same was then, and had been prior thereto, his homestead; but the extent or boundary of his homestead had never been determined by him in pursuance of law; nor had the same ever been defined or ascertained by proceedings under the statute.

Ellen Foster, the widow, with her family, continued to use and occupy said double dwelling for about ten years after her husband's death, when she removed into the smaller house on the south end of lot 4, which she has occupied as a home ever since, except from about the 1st of June, 1860, to September 1, 1860, when she removed, temporarily, to St. Louis, to educate her children; and she now occupies it as her home, and has paid no rent therefor, nor leased the same. At the November term, 1857, of the county court, upon the application of said Ellen Foster, the said lot 4, and north 45 feet of lot 3, were duly assigned to her as her dower, to use, occupy, and enjoy during her natural life.

On the 2d day of May, 1859, Ellen Foster, as guardian, executed and delivered, under license from the county court, a deed of trust to George M. Van Hozen, on said lot 4, and north 45 feet of lot 3, to secure the sum of $1,477.85, due Samuel C. Young in six and nine months, for money by him and by one Van Wyck loaned at, and prior to, that time, and used by her in completing and

finishing said dwelling-house on said lot 4, and north 45 feet of lot 3, and in the support and education of said children. Said deed of trust was foreclosed in the district court of Scott county, at the February term, 1861, and a decree rendered in favor of said Young of $1,427.15, and said property was sold thereunder, on the 11th day of April, 1861, on special execution to said Young for $1,200, and a deed properly executed by the sheriff therefor. In said suit of foreclosure Ellen Foster was made a party as guardian, but was not made a party in her own right.

On or about the 17th day of November, 1858, Spier Whitaker recovered a judgment in the said district court, against said Ellen Foster and James Grant, in the sum of $702.19, which was for money loaned to said Ellen Foster, and for services and materials furnished by said Whittaker to said Ellen, and for which said Grant became surety for said Ellen, and the said lot 4, and north 45 feet of lot 3, were, on the 25th day of June, 1859, sold on execution, under said judgment, to said James Grant, for $378, and a sheriff's deed executed therefor. Afterward, on the 10th of September, 1859, D. B. Nash, on the petition of Spier Whitaker was duly appointed administrator, *de bonis non*, of Thomas Foster, deceased. At the June term, 1859, the said claim of Spier Whitaker was allowed, by the county court, as a valid claim against the estate of Thomas Foster, deceased, the amount of $560. On the petition of said D. B. Nash, administrator *de bonis non*, filed October 14, 1859, after full notice to, and appearance by, all the heirs by guardian, and said widow, the said lot 4, and the north 45 feet of lot 3, were, on the 16th day of February, 1860, ordered, with all the other real estate of said Foster, deceased, to be sold by said administrator to pay the debts of said estate, including, among others, the said debt to said Whitaker. Said lot 4 was duly appraised at $2,800, and north 45 feet of lot 3 at $1,800. Said order and decree, on appeal to the district court of said county

by the heirs, widow, S. L. Young, and Charles Tegeler, were, at the August term, affirmed.

On the 25th day of September, 1860, Nash, as such administrator, in pursuance of said decree and order, duly sold said lot 4, and the north 45 feet of lot 3, to S. C. Young, for $881.44, and executed to him a deed therefor, which was duly approved by the said county court. It does not appear that the other real estate was first exhausted before the sale of the property claimed as homestead.

On the 25th of September, 1860, James Grant and wife executed and delivered to S. C. Young a quit-claim of all their interest in and to said lot 4, and north 45 feet of lot 3; and on the 9th day of November, 1868, Samuel C. Young conveyed the said property, by warranty deed, to Louis Mathe, one of the defendants herein.

Samuel C. Young has been in possession of said lot 4, and 45 feet of lot 3, ever since the 11th day of April, 1861, up to date of said conveyance to Mathe, except the small house on north end of lot 4, and that part inclosed and used as a part thereof, by said Ellen as a home, and has received the rents and profits and income thereon, with exception of that part so used by said Ellen. Young occupied the house on lot 4, by his family, as a home, during a part of said time; but for how long the evidence does not definitely show. Louis Mathe has been in possession and use of said premises, receiving the rents and profits therefor ever since his said purchase, except from that part in the possession of Ellen Foster.

From the facts found the referee deduced the following conclusions of law: That the dwelling-house on north 45 feet of lot 3, at the time of the decease of Thomas Foster, constituted his homestead, and continued the homestead of Ellen Foster until her removal to the small house on north end of lot 4. That said dwelling-house, as such homestead, was exempt from sale for the debts of either

Thomas Foster, deceased, or of Ellen Foster, and that the sale under the Whitaker judgment, and that by Nash, administrator, are both void as to said homestead.

That the deed of trust to Van Hozen to secure Young was legally executed, and the sale thereunder by the sheriff on foreclosure was legal and valid and conveyed all the estate, right, title, and interest of the said heirs of Thomas Foster, deceased.

That the said Ellen Foster is estopped, by her covenants in the said deed of trust to said Van Hozen, from setting up and claiming any dower, or homestead right, as against said Young or his grantees in and to said lot 4 and north 45 feet of lot 3, having conveyed the same in fee simple, covenanting that she was so seized and that the same was free from any incumbrance.

That the title and interest of the children of Thomas Foster were conveyed by said deed of trust, and by the sale of Nash, administrator; and said deed of trust having been legally foreclosed, and the said heirs having had their day in court, they are foreclosed from redeeming the same under said deed of trust.

The plaintiff's motion to set aside the report of the referee was overruled, and a decree was entered dismissing plaintiffs' petition.

Plaintiffs appeal. The further necessary facts are stated in the opinion.

*Martin, Murphy & Suksdorf* for the appellants.

*Davison & True* for the appellees.

DAY, J. — The principal question, and the one which in our view is decisive of the case, relates to the effect

1. CONVEYANCE: deed by guardian and effect of covenants.

of the trust deed to Van Hozen, and of the proceedings had thereunder. I. *As to the effect of said deed upon the rights of Ellen Foster.* The deed is executed by her as the guardian of the minor heirs of Thomas Foster, deceased, and contains

the following covenants : " The said Ellen Foster, guardian as aforesaid, hereby covenanting for herself, her heirs, executors, and administrators that she is seized of a good and indefeasible title in fee simple ; that the premises are free and clear from every incumbrance ; that she has full right to sell and convey the same in the manner aforesaid ; and that she will warrant and defend the title unto the said party of the second part, and his heirs, against the lawful claims of all persons whomsoever." And after providing for the sale of the premises in default of the payment of the sum secured, the trust deed provides as follows, to wit : " And he, the said George M. Van Hozen, will be empowered to execute a deed in fee simple for the premises aforesaid, or so much as he may sell, with all the covenants touching title herein contained, to the purchaser, which deed will be absolute, and prevent said party of the first part, or her heirs or assigns, from setting up any claim thereto, either in law or in equity."

The plaintiff, Ellen Foster, now claims that, notwithstanding this conveyance, with all these covenants and these stipulations, she is in law entitled to the possession and enjoyment of the property conveyed, for the period of her natural life.

The leading case in this country discussing the effect of covenants in a conveyance of one contracting *in auter droit*, is that of *Sumner, admr.*, v. *Williams et al.*, 8 Mass. 162. In that case Thomas Williams and Joseph Williams, as administrators of the estate of William Dudley, deceased, under a license granted by the proper court, conveyed to Increase Sumner and Elizabeth, his wife, certain real estate of which William Dudley died seized. The covenants, which are drawn with great caution, and, it would seem, with the purpose of guarding against any recurrence to the grantors, or their estates, in case of a failure of title, are as follows : " And we, in our said capacity of administrators, do covenant with the said Increase and Elizabeth,

Vol. XXXV.—5

their heirs and assigns, that we, as administrators as aforesaid, are lawfully seized of the premises; that they are free and clear from all incumbrances by us or with our knowledge made; * * * that we have in our capacity good right to sell and convey the same to the said Increase and Elizabeth; and that, as administrators as aforesaid, we will warrant and defend the same to the said increase and Elizabeth, their heirs and assigns forever, against the lawful claims and demands of all persons." It was afterward discovered that William Dudley was only tenant in tail, at the time of his death. The heir evicted the grantees of the administrators, and they brought suit upon the covenant of warranty. Each of the three judges of the supreme court of Massachusetts filed an opinion, characterized by great research and ability. PARKER and SEWALL, JJ., held that as the covenants could not bind the estate of the decedent, they bound the administrators personally, although it was conceded that the grantees did not rest upon a supposed personal liability of the grantors for their security; and that both parties believed that whatever virtue there was in the covenants, the estate of *William Dudley*, and not those of the administrators, was to be affected by them. SEDGWICK, J., dissented, principally upon the ground that the deed purported to convey only an equity of redemption, and that the covenants must be limited to that *equity* and did not extend to the *land*.

Following this is the case of *Whiting* v. *Dewey*, 15 Mass. 428. In this case Hugo Dewey and Hugo Berghardt, as testamentary guardians of Abigail Dewey, an infant daughter of Benedict Dewey, deceased, conveyed to the plaintiff certain land, covenanting in their capacity of guardians " that Benedict Dewey, deceased, died seized of the premises, and that they, the said guardians, in right of the said minor, were lawfully seized of the premises." The title to a portion of the lands having failed, suit was instituted against Hugo Dewey, the surviving guardian,

upon his covenants. WILDE, J., delivering the opinion of the court, said: " The original defendant, as the surviving covenantor, is charged in his private capacity with the breach of these covenants; and the first question is, whether by law he can be charged personally upon these covenants. This question was very fully considered in the case of *Sumner* v. *Williams*, 8 Mass. 162, which, in principle, cannot be distinguished from the case at bar; and although the court was divided in opinion in that case, the soundness of the decision by a majority of the court has never since been questioned; and it is supported by a current of authorities, and by well-established principles. When parties contract *en autre droit*, and fail to bind their principals, they are to be held personally responsible. This is the general rule, and is perfectly reasonable and just. The exception is, where the contracting party is a public agent, and contracts on the public account. This exception is founded on public policy, and, therefore, emphatically proves the rule; for if the rule had not been well established, the exception would have been placed on other grounds than that of public policy."

The case of *Heard* v. *Hall*, 16 Mass. 458, *is on all fours* with the present. Hugh Hall, who was seized of the premises in dispute, devised them to his son Benjamin for his natural life, with remainder to his children and their heirs. Benjamin had six children, who became tenants in common of the premises. In 1799, the elder of these children, upon an inquisition of lunacy, was found to be a person *non compos mentis*, and the plaintiff, Joseph Heard, was appointed his guardian. In 1813, Pitts Hall, one of the children of Benjamin, conveyed to plaintiff his interest in the premises, and shortly afterward died. In 1814, the plaintiff, in his capacity of guardian, obtained a license from the proper court to sell so much of the real estate of his ward as should be necessary for the payment of the debts incurred for the support of the ward and his

family. By virtue of this license he sold a portion of the premises, at public sale, to Isaac F. Coffin. And, on June 26, 1815, he executed a deed purporting to convey this portion to him, with a covenant that he was lawfully authorized and empowered to make sale of the granted premises. On the same day, Coffin, for the alleged consideration of $3,500, reconveyed the premises to the plaintiff. In 1831, an agreement was entered into between the plaintiff and the defendant, Charles Hall, and his sister Sally, the only surviving children of Benjamin Hall, whereby the plaintiff quit-claimed to them all the right and title which he acquired by virtue of the deed from Coffin, in consideration of the sum of $1,000, by them paid. On June 12, 1834, Sally Hall, for a valuable consideration, conveyed all her interest and estate in the premises to plaintiff. The plaintiff brought an action against Charles Hall, for a partition of the premises, claiming twenty-one undivided thirty-sixth parts thereof. The defendant alleged that he was seized of the undivided one-half. The question presented was as to the effect of the deed of Joseph Heard as guardian to Isaac Coffin. At the time he conveyed to Coffin a distinct portion of the land, as the property of his ward, he himself was the owner of an undivided one-sixth part thereof, by virtue of the conveyance of Pitts Hall. From the opinion of WILDE, J., announcing the decision of the court, we quote the following :

"The principal question arising in the case is, whether the petitioner can now set up his title derived from Pitts Hall, or whether he is not estopped by his deed to Coffin, as to that part of the premises which was conveyed to him as the property of Benjamin Hall. That he would not be allowed to set up such a claim in a court of equity is undeniable, this being a strong case within the well-established rule of equity, that where one having title acquiesces in the disposition of his property, for a valuable considera-

tion, by a person pretending to title, and having color of title, he shall be bound by such disposition, and shall not afterward be allowed to set up his own title against the purchaser. And so it has been held, that if one having title stands by while another purchases from a third person claiming title, and does not forbid the purchase, or disclose his own title, he shall be bound. *A fortiori,* if he encourages the purchase; or, as in the present case, a person sells his own property, as the property of another, to a *bona fide* purchaser for a valuable consideration. * * * In the present case, the petitioner's deed purports to be an unqualified grant of the land to the grantee in fee simple. It purports to pass the whole estate, and it is utterly inconsistent with the plain import of the grant, to allow the petitioner now to show that only a part of the estate passed by that conveyance. * * * The petitioner expressly covenants that he is lawfully authorized and empowered to make sale of the granted premises, that is, of the whole estate. Most certainly he was not so authorized; and this covenant operates to avoid circuity of action, by way of rebutter, and estops the petitioner from setting up his title from Pitts Hall. The respondent, holding under the deed to Coffin, has a right to avail himself of this estoppel." See, also, *Poor* v. *Robinson,* 10 Mass. 131; *Wood* v. *Livingston,* 11 Johns. 35; *Dougry* v. *Topping & Holme,* 4 Paige, 94; *Cochran* v. *Harrow,* 22 Ill. 345; Rawle on Covenants, 570–573, and cases cited.

These cases settle, so far as any question can be determined by authority, that the covenants in the deed of Ellen Foster bind her personally, and estop her from asserting any title to the property inconsistent with the terms of her grant. The covenants in her deed make a much stronger case against her than do the covenants in the principal case of *Sumner* v. *Williams* make against the administrators. While the covenants in that case seem to be drawn with the express purpose of exonerating

the grantors from liability thereon, those in this case seem to be expressly intended to create such liability. If the administrators were bound by those covenants, *a fortiori*, should she be bound by these? She covenants *for herself, her heirs, executors and administrators, that she is seized of a good and indefeasible title in fee simple, and that she will warrant and defend the title unto the party of the second part, and his heirs, against the lawful claims of all persons whomsoever.* Upon what principle can she now be allowed to say that she had no present seizin in behalf of her wards, that she was seized in her own right, that she had no authority to convey an estate to vest *in præsenti*, and, in opposition to her deed, to assert in herself a claim to this property during her natural life? The considerations which were so strongly urged against the personal liability of the covenantors in *Sumner* v. *Williams*, have no application here. In that case it was urged that the proceeds of the sale went to the benefit of the estate, and that it was clearly apparent that they did not intend to be personally bound upon their covenants. In this case it is shown that a portion of the money borrowed was expended in making improvements upon the very property now claimed by plaintiff; and the fact that, from the date of the sale, on the 11th of April, 1861, until the 14th day of June, 1869, the date of the commencement of this action, Young and his grantee were allowed to remain in the undisturbed possession of the most valuable part of said premises, receiving the rents thereof, raises a strong presumption that the plaintiff *intended* to be bound by her covenants, believed that she was thereby barred of any right in the property.

We have found no authority inconsistent with those cited. The cases referred to by appellant are those in which an estoppel *in pais* was sought to be evaded, and hence are not applicable to the question under consideration.

We conclude without any hesitancy that the plaintiffs' claim cannot be sustained.

II. *As to the right of Ellen Foster to redeem from the sale under foreclosure.* It is claimed that this right exists because she was not made a party in her own right to the foreclosure proceedings. But she did not in such right execute the trust deed. She did not purport to convey any interest of her own in the property, but by her covenants she impliedly stipulated that she had no interest therein. If she had stood by and seen another execute a mortgage on her property as his own, she could not claim a right to redeem because she was not made a party to the foreclosure proceedings, because by her acts she is estopped from making any claim to, or asserting any interest in, the property. And, certainly, she is placed in no better position by the fact that she has mortgaged her own property as that of another. The effect of her covenants is the same as though she had disclaimed any personal interest in the property. She cannot now claim title to, or interest in, the property, even for the purpose of redeeming, without denying her covenants, and without such title or interest the right of redemption does not exist.

*2. —— right of redemption.*

The right of redemption cannot be admitted without ignoring all we have said as to the effect of the covenants in plaintiff's deed. See *Huston* v. *Seeley*, 27 Iowa, 183.

III. *As to the effect of the trust deed upon the rights of the other plaintiffs.* 1. It is urged that, at the time of this conveyance, the seizin to this property was in the widow, Ellen Foster, and not in her wards, and that, consequently, the trust deed of their interest is void; and that section 2211 of the Revision applies only to sales, and does not authorize a mortgage.

*3. GUARDIANS' SALE: reversionary interest of heirs.*

The estate of the heirs of Thomas Foster is a reversion. If an owner in fee die, leaving a widow, who is endowed

from his land, his heirs are owners of the reversion. 1 Hill. on Real Property (4th ed.) 763. A reversion, like a vested remainder, though not to take possession *in præsenti*, is still an immediate fixed right of future enjoyment, and subject to most of the rights and liabilities incident to estates in possession. Id. 765. In case of an estate in dower, or by the curtesy, after the death of the last owner in fee, the heir takes only a reversion. But it is a misnomer to call it a case of suspended descent, for the reversion descends and vests absolutely in the heir; he may sell it, incumber it, devise it, and it is subject to execution as part of his property during his life. Id. 972, note *a ;* see, also, 4 Kent (8th ed.), ch. 63, p. 373.

We conclude, therefore, that the interest of these heirs is the proper subject of a conveyance.

The rule contended for by appellant applies where one conveys land which is in the *adverse possession* of another. The reason of the rule is that at common law the assignment of a chose in action is not authorized, and the transaction partakes of the nature of maintenance. *Jackson v. Dumont,* 9 Johns. 55 ; *Martin* v. *Pace,* 6 Blackf. 99. The widow's dower is not held adversely to the heir. Her life estate and the heir's reversion together constitute the fee. Besides, things in action may be assigned under our law, and the reason of the rule ceasing, it may well be doubted whether the rule itself, even independently of section 2211 of the Revision, should longer apply.

2. It is next objected that, while a guardian may mortgage the property of his wards, he cannot execute a deed of trust thereon. We regard the objection as without foundation. Section 2552 of the Revision confers upon the guardian authority, under the direction of the court, to mortgage the real property of the ward. We are satisfied that the term is here used in its general sense, of granting an estate as a pledge for the

4. —— deed of trust.

payment of money, without reference to the form which the grant assumes.

As the interest of all the plaintiffs is divested by the deed of trust, and the foreclosure and sale thereunder, it becomes unnecessary that we should examine the effect of the sales under the other proceedings.

Affirmed.